# 06-01.60 – Policy on Sexual Harassment and Other Sexual Misconduct

## I. Policy Statement

Towson University ("University") is committed to providing a working, learning, and living environment free from Sexual Harassment and Other Sexual Misconduct. Sexual Harassment is a form of discrimination prohibited by state and federal laws (including Title IX of the Education Amendments of 1972 as amended ("Title IX"), the Campus SaVE Act, and Title VII of the Civil Rights Act of 1964 as amended), may constitute criminal activity, and is a form of Sex Discrimination in violation of the University's Non-Discrimination Policy (TU Policy 06-01.00, Policy Prohibiting Discrimination).

Sexual Harassment is a broad term describing a range of prohibited behavior and conduct as defined in Section III below. Other Sexual Misconduct ("OSM") is a term describing other prohibited behavior and conduct, including Sexual Coercion or Sexual Exploitation as defined in Section III below, which may or may not constitute Sexual Harassment as defined under the Title IX regulations. Sexual Harassment and OSM are prohibited by the University and will not be tolerated.

The University endeavors to foster a climate free from Sexual Harassment and OSM through training, education, and prevention programs, as well as by following policies and procedures that promote prompt reporting. This also means the University works to investigate and resolve Formal Complaints of Sexual Harassment and OSM in a reasonably prompt timeframe. It will also take prompt action to effectively address and work to prevent Sexual Harassment and OSM.

Retaliation against someone for participating in the University's grievance procedures regarding this Policy is prohibited. This includes any form of Retaliation (e.g., intimidation, threats, coercion, or discrimination) against any individual who (i) has been the Reporting Party or Responding Party under this Policy, (ii) reports or files a complaint alleging a violation of the Policy, and/or (iii) cooperates or participates in any meeting or proceeding under this Policy (including providing information, assisting, or testifying).

Members of the University Community found to have violated this Policy will be subject to disciplinary action in accordance with the University's Policies and Procedures. A violation of this Policy may constitute professional misconduct and/or moral turpitude under the Towson University 02-01.00, Policy on Appointment, Rank and Tenure of Faculty, and/or gross misconduct and/or moral turpitude under Towson University's Policy 07-01.22, on Separation for Regular Exempt Employees.

The Title IX Coordinator, who works in the University's Office of Inclusion & Institutional Equity ("OIIE"), administers this Policy and coordinates the University's efforts to carry out its responsibilities under Title IX. OIIE receives reports of Sexual Harassment and OSM, and conducts fair and impartial Investigations. No employee (other than law enforcement) is authorized to investigate or resolve reports of Sexual Harassment or OSM without the involvement of the Title IX Coordinator. Please report allegations of possible violations of this Policy to OIIE or Title IX Coordinator:

Office of Inclusion & Institutional Equity Towson University (https://www.towson.edu/inclusionequity/index.html)

EXHIBIT

A

Administration Building, Room 214 8000 York Road

Towson, Maryland 21252

(410) 704-0203

Online reporting form (https://towson-advocate.symplicity.com/titleix_report/index.php/pid758086) available.

## II. Applicability

The University has jurisdiction over Title IX Sexual Harassment complaints when it has actual knowledge of Sexual Harassment in an education program or activity against a person in the United States.  This Policy applies to all of the University's education programs or activities, whether such programs or activities occur on-campus or off-campus. This Policy also applies to all members of the University Community, including students, faculty, and staff, and to University guests, contractors, and other third parties over which the University has substantial control.

In addition to allegations of Sexual Harassment falling within Title IX jurisdiction, the University may also address allegations of Sexual Harassment and OSM (e.g., Sexual Coercion or Sexual Exploitation) under this Policy affecting its students or employees that take place outside an "educational program or activity,"  take place outside the United States, or otherwise fall outside Title IX jurisdiction, including, but not limited to, providing supportive measures or pursuing disciplinary action for violating this Policy.

The University may amend this Policy from time to time.  Further, the Title IX Coordinator with the approval of the General Counsel, may from time to time make revisions and updates to this Policy to comply with applicable laws, regulations and governmental guidance and any amendments thereto.

Nothing in this policy supersedes or replaces any obligations imposed by federal law or state law and/or policy (such as the USM policy VI-1.60, Policy on Sexual Harassment).

## III. Definitions

A. **"Actual Knowledge"** means notice of Sexual Harassment or OSM or allegations of Sexual Harassment or OSM to the University's Title IX Coordinator or any official of the University who has authority to institute corrective measures on behalf of the University.

B. An **"Advisor"** is a person chosen by either the Reporting Party or Responding Party who may be, but is not required to be, an attorney.  An Advisor is someone who provides support, guidance, assistance, and/or advice to the individual, and who may inspect and review evidence directly related to the allegations in the Formal Complaint. An Advisor may not submit any written request or papers on behalf of a party (including appeals) or serve as a witness during any meeting or proceeding under this Policy.  An Advisor may be present during any meeting or proceeding, and may consult with their advisee quietly or in writing, or during breaks, but may not speak on behalf of the advisee to the Investigator or Hearing Officer.  An Advisor may ask process-related questions of an Investigator or Hearing Officer, but may never ask questions of their advisee on the record during a meeting or proceeding, and may not offer facts or submit argument on behalf of their advisee.  During the **live hearing only**, a party's Advisor is permitted to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility.  An Advisor is a party's proxy during the hearing; the Advisor is not "representing" the

party. The role of the Advisor is to relay their advisee's desired questions to the other party and witnesses. Advisors are not permitted to raise any objections, argue in support of a party's position, or otherwise "represent" a party. All witnesses, including the Reporting Party and Responding Party, are expected to respond to questions during any meeting or proceeding on their own behalf. Any questions posed by the Advisor to their advisee, or factual assertions or argument provided by the Advisor to an Investigator or Hearing Officer will not be considered and will be redacted from the record. If an Advisor does not adhere to these expectations, the Title IX Coordinator, Hearing Officer or Investigator may, at their discretion, order the excusal of the Advisor from any meeting or proceeding.

C. **"Anonymous Complaints"** are complaints of Sexual Harassment or OSM filed anonymously with the Title IX Coordinator, meaning that the individual filing the complaint does not identify themselves. Anonymous Complaints are not Formal Complaints. Anonymous complainants are encouraged to speak with the Title IX Coordinator or an Investigator so as to understand the potential limitations for an investigation being conducted based on an anonymous report.

D. **"Burden of Proof and Gathering of Evidence"** the burden of proof and of gathering evidence sufficient to reach a determination regarding responsibility by a preponderance of evidence rests on the University and not on the parties.

E. **"Complainant (or Reporting Party)"** is an individual who is alleged to be the victim of conduct that could constitute Sexual Harassment or OSM. A Reporting Party may include, but not be limited to, any member of the University Community and individuals not affiliated with the University.

F. **"Confidential Employee"** is: (1) any employee who is a licensed medical, clinical, or mental-health professional (i.e., physicians, nurses, physicians' assistants, psychologists, psychiatrists, professional counselors, and social workers (and those performing services under their supervision) ("Health Care Providers")) or pastoral care providers acting in their professional role in the provision of services; (2) any employee providing administrative, operational and/or related support for such Health Care Providers in their performance of such services or providing individual intake, advocacy, and referrals to clinical and counseling services; and (3) any individual acting in an approved confidential role as so designated by the Title IX Coordinator. A Confidential Employee will not disclose information obtained from patients, clients, or persons otherwise counseled or treated to the Title IX Coordinator or others without the individual's permission except as provided for or required by law.

G. **"Consent"** means a knowing, voluntary, and affirmatively communicated willingness to mutually participate in a particular sexual activity or behavior. It must be given by a person with the ability and capacity to exercise free will and make a rational and reasonable judgment. Consent may be expressed either by affirmative words or actions, as long as those words or actions create a mutually understandable permission regarding the conditions of sexual activity. Consent may be withdrawn at any time. Consent cannot be obtained by force, threat, coercion, fraud, manipulation, reasonable fear of injury, intimidation, or through the use of one's mental or physical helplessness or incapacity. Consent cannot be implied based upon the mere fact of a previous consensual dating or sexual relationship. Consent to engage in sexual activity with one person does not imply Consent to engage in sexual activity with another.

H. **"Dating Violence"** is violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim; and where the existence of such a relationship is determined based on the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.  Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse. Dating violence does not include acts covered under the definition of domestic violence.

I. **"Domestic Violence"** includes felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction.

J. **"Education program or activity"** includes locations, events, or circumstances over which the University exercised substantial control over both the Responding Party and the context in which the Sexual Harassment or OSM occurs, and also includes any building owned or controlled by a student organization that is officially recognized by the University.

K. **"Exculpatory Evidence"** is evidence that tends to excuse, justify, or absolve the alleged responsibility of a Responding Party.

L. **"Formal Complaint"** means a document filed by the Reporting Party with OIIE or signed by the Title IX Coordinator alleging Sexual Harassment or OSM against a Responding Party and requesting that the University investigate the allegation of Sexual Harassment or OSM.  At the time of filing a Formal Complaint   a Reporting Party must be participating in or attempting to participate in an education program or activity of the University for purposes of Title IX jurisdiction. A "document filed by the Reporting Party" means a document or electronic submission that contains the Reporting Party's physical or digital signature, or otherwise indicates that the Reporting Party is the person filing the Formal Complaint.

M. **"Gender Expression"** refers to how a person represents their gender identity, such as through behavior, clothing, hairstyles, voice, body characteristics etc.

N. **"Gender Identity"** refers to each person's deeply held sense, knowledge, or experience of their own gender. Gender identity can correlate or differ from the assigned sex at birth.

O. **"Grievance Procedures"** refers to the Grievance Procedures for the Resolution of Sexual Harassment and OSM complaints applicable to Reporting Parties and Responding Parties under this Policy.

P. **"Hearing Officer"** is a person, who cannot be the same person as the Title IX Coordinator or an Investigator, presiding over the live hearing and charged with making evidentiary and factual decisions regarding responsibility for alleged violations of this Policy.

Q. **"Hearing Panel"** is a body of Hearing Officers identified by the University to serve as decision makers regarding evidentiary and factual decisions regarding responsibility for alleged violations of this Policy.

**R. "Incapacitation"** is a state where an individual cannot make an informed and rational decision to engage in sexual activity because they lack conscious knowledge of the nature of the act (e.g., to understand the "who, what, when, where, why and/or how" of the sexual interaction) and/or is physically helpless. Examples may include individuals who are asleep, unconscious, or otherwise unaware that the sexual activity is occurring. The use of alcohol or other drugs does not, in and of itself, negate a person's ability to give Consent. However, a level of intoxication can be reached, short of losing consciousness, in which a person's judgment is so impaired that they become incapacitated and thus are not capable of giving Consent. The impact of alcohol and drugs varies from person to person, and evaluating Incapacitation requires an assessment of how the consumption of alcohol and/or drugs impact an individual's:

1. Decision-making ability;

2. Awareness of consequences;

3. Ability to make informed judgments; and/or

4. Capacity to appreciate the nature and the quality of the act.

Because the use of alcohol and other drugs can have a cumulative effect over time, a person who may not have been incapacitated at the beginning of sexual activity may become incapacitated and therefore unable to give effective Consent as the sexual activity continues. Evaluating Incapacitation also requires an assessment of whether a Responding Party, or a sober, reasonable person in the Responding Party's position, knew or should have known, that the Reporting Party was incapacitated. If the person who wants to engage in sexual activity is too intoxicated to judge another's communications about Consent, that person has an obligation to cease the activity. A person's responsibility for obtaining Consent is not diminished by use of alcohol and/or other drugs. Being intoxicated or impaired by drugs or alcohol is never an excuse for Sexual Harassment or OSM and does not diminish one's responsibility to obtain Consent.

**S. "Inculpatory Evidence"** is evidence that shows, or tends to show, a person's involvement in an act, or evidence that can establish responsibility.

**T. "Investigation"** means a prompt, thorough, and impartial summary of available evidence related to an allegation of Sexual Harassment or OSM conducted by a University employee or designee in response to a report or complaint of Sexual Harassment or OSM made pursuant to this Policy. The purpose of an Investigation is to gather relevant evidence and facts regarding allegations of Sexual Harassment or OSM.

**U. "Investigator"** are those individuals designated by OIIE to investigate allegations of violations of this Policy.

**V. "Notice of Investigation/Allegation"** is a communication provided to the Reporting Party and Responding Party notifying them that the University will conduct an Investigation into an alleged violation of this Policy. It will inform these parties of the "who, what, when, and where" of the alleged misconduct to the extent they are known. The Notice will also inform the parties about the grievance procedures and informal resolution process; the presumption of non-responsibility; that they may have an advisor; and that it is a violation of this Policy for an individual to make a formal or informal complaint or report in bad faith or without justification, or knowingly make false statements or knowingly submit false information during any investigation or proceeding under this Policy.

W. **"Other Sexual Misconduct"** ("OSM") means prohibited behavior and conduct, including Sexual Coercion or Sexual Exploitation, which may or may not meet the definition of Sexual Harassment.

X. **"Presumption of Non-Responsibility"** requires that the University not treat the Responding Party as responsible until the University has objectively evaluated the evidence, and there has been a finding that a violation of this Policy has occurred at the conclusion of the grievance process.  However, the University may approve an emergency removal of a Responding Party, after an individualized safety and risk analysis, where the Responding Party poses an immediate threat to the physical health or safety of the Reporting Party (or any other individual) prior to the conclusion of a grievance process (or even where no grievance process is pending).  In such cases, the respondent will receive notice and an opportunity to challenge the removal decision.

Y. **"Relevant Evidence"** is both inculpatory and exculpatory evidence used to determine if the responding party is responsible for a policy violation. Evidence is relevant when a reasonable person would likely accept the information as having probative value about the underlying allegations. Questions and evidence about the Reporting Party's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Reporting Party's prior sexual behavior are offered to prove that someone other than the Responding Party committed the conduct alleged by the Reporting Party, or if the questions and evidence concern specific incidents of the Reporting Party's prior sexual behavior with respect to the Responding Party and are offered to prove consent. Questions and evidence about a party's prior sexual history with an individual other than a party to the proceedings are not relevant, except to: prove the source of injury; prove prior sexual misconduct; support a claim that a student has an ulterior motive; or impeach a party's credibility after that party has put his or her own prior sexual conduct at issue.

Z. **"Reporting Party"** See definition for Complainant.

AA. **"Respondent (or Responding Party)"** refers to the individual alleged to have engaged in conduct that could constitute Sexual Harassment or OSM.

AB. **"Responding Party"** See definition for Respondent.

AC. **"Responsible Employee"** is a designation given to certain University employees, all of whom have a duty to report Sexual Harassment or OSM that they learn of to the University's Title IX Coordinator, and is not a Confidential Employee. Responsible Employees must promptly report all known relevant information to the Title IX Coordinator, including the name of the Reporting Party, Responding Party, and any witnesses and any other relevant facts, including the date, time, and location of the misconduct. Responsible Employees include, without limitation:

1. Title IX Coordinator;

2. All OIIE staff;

3. University Administrators;

4. Non-Confidential Employees acting in their supervisory roles;

5. Faculty members;

6. Athletic coaches;

7. University law enforcement;

8. Housing and Residence Life staff; and

**9.** Orientation leaders assisting incoming students.

The mere ability or obligation to report Sexual Harassment or OSM, or to inform an individual about how to report Sexual Harassment or OSM, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the University.  Only the following individuals are designated as having the authority to institute corrective measures on behalf of the University:

**1.** Vice President for Inclusion & Institutional Equity;

**2.** Title IX Coordinator;

**3.** Deputy Title IX Coordinator for Athletics;

**4.** Provost and Executive Vice President for Academic and Student Affairs;

**5.** Vice President for Student Affairs;

**6.** Dean of Students; and

**7.** Associate Vice President of Human Resources.

**AD.** **"Retaliation"** means intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right or privilege secured by law or this Policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation or proceeding under this Policy.

**AE.** **"Sexual Coercion"** means the use of unreasonable pressure in an effort to compel another individual to initiate or continue sexual activity against the individual's will. A person's words or conduct are sufficient to constitute coercion if they wrongfully impair another individual's freedom of will and ability to choose whether or not to engage in sexual activity. Coercion includes but is not limited to intimidation, manipulation, threats of emotional or physical harm, and blackmail. Examples of coercion include threatening to disclose another individual's private sexual information, or threatening to harm oneself if the other party does not engage in the sexual activity.

**AF.** **"Sexual Exploitation"** means taking non-consensual or abusive sexual advantage of another person for one's own advantage or benefit or for the advantage or benefit of anyone other than the person being exploited. Examples of Sexual Exploitation include but are not limited to prostitution; using any kind of photographic or recording device to capture, post and/or publish images of a person's intimate parts and/or of a sexual act without the Consent or knowledge of the involved party; intentionally or unintentionally publishing, recreating, or reproducing images of a person's intimate parts or of a sexual act without the knowledge or Consent of the party involved; voyeurism; inducing Incapacitation for the purpose of Sexual Exploitation or of having sex with the incapacitated person (regardless of whether Sexual Exploitation and/or sexual activity actually takes place); and/or knowingly transmitting a sexually transmitted infection to a partner without their Consent.

**AG.** **"Sexual Assault"** means any of the following:

**1.** Forcible sex offenses—Any sexual act directed against another person, without the consent of the victim including instances where the victim is incapable of giving consent, including:

**a.** Forcible Rape—(Except Statutory Rape) The carnal knowledge of a person (i.e., vaginal sexual intercourse), forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her temporary or permanent mental or physical incapacity.

**b.** Forcible Sodomy—Oral or anal sexual intercourse with another person, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity.

**c.** Sexual Assault With An Object—To use an object or instrument to unlawfully penetrate, however slightly, the genital or anal opening of the body of another person, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity.

**d.** Forcible Fondling—The touching of the private body parts of another person for the purpose of sexual gratification, forcibly and/or against that person's will or not forcibly or against the person's will in instances where the victim is incapable of giving consent because of his/her youth or because of his/her temporary or permanent mental or physical incapacity.

**2.** Nonforcible sex offenses—Unlawful, nonforcible sexual intercourse, including:

**a.** Incest—Nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

**b.** Statutory Rape—Nonforcible sexual intercourse with a person who is under the statutory age of consent.

**AH. "Sexual Harassment"** includes conduct on the basis of sex that satisfies one or more of the following: (1) An employee of the University conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct (quid-pro-quo); (2) Unwelcome conduct determined by a reasonable person to be so severe, pervasive AND objectionably offensive that it effectively denies a person equal access to the University's education program or activity; or (3) any of the following: "Sexual Assault", "Dating Violence", "Domestic Violence" or "Stalking."

"Sexual Harrasment" in employment also includes conduct, which need not be servere or pervasive, that consists of unwelcome sexual advances, requests for sexual favors, or other conduct of sexual nature when: (1) submission to the conduct is made either explicity or implicity a term or condition of employment of an individual; (2) submission to or rejection of the conduct is used as a basis for employment decisions affecting the individual; or (3) based on the totality of the circumstances, the conduct unreasonably creates a working enviornment for an employee that a reasonable person would perceive to be abusive or hostile.

**AI. "Sexual Intercourse"** means vaginal or anal penetration, however slight, with any body part or object, or oral penetration involving mouth to genital contact.

**AJ. "Standard of Evidence"** The University investigates allegations of Sexual Harassment and OSM to determine whether the preponderance of the evidence indicates a Policy violation occurred. The preponderance of the evidence corresponds to an

amount of evidence indicating a Policy violation is more than 50 percent likely. This is the same standard of review that is used in other disciplinary proceedings at the University for allegations of code of conduct violations involving discrimination or harm to another individual.

**AK. "Stalking"** means engaging in a course of conduct directed at a specific person (as it pertains to sexual advances and/or dating or domestic violence) that would cause a reasonable person to—(1) fear for his or her safety or the safety of others; or (2) suffer substantial emotional distress. For the purposes of this definition:

1. Course of conduct means two or more acts, including, but not limited to, acts in which the alleged stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

2. Reasonable person means a reasonable person under similar circumstances and with similar identities to the victim.

3. Substantial emotional distress means significant mental suffering or anguish that may, but does not necessarily require, medical or other professional treatment or counseling.

**AL. "Supportive Measures"** are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the parties before or after the filing of a Formal Complaint or where no Formal Complaint has been filed.  Such measures are designed to restore or preserve equal access to the education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter Sexual Harassment and OSM.

1. Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

2. The University must maintain as confidential any supportive measures provided to the Reporting Party or Responding Party, to the extent that maintaining such confidentiality would not impair its ability to provide them.

3. The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures.

**AM.** A **"Support Person"** is someone other than an Advisor whose presence provides support to a party. Examples include, but are not limited to, a family member, friend, faculty member or staff member. Both parties are entitled to be accompanied by one Support Person of their choosing in meetings and proceedings related to the investigative and grievance process. However, a Support Person cannot speak on behalf of the individual, directly participate in the proceedings, or submit any written requests (including appeals) on behalf of the individual. The Support Person also cannot serve as a witness during any meeting or proceeding under this Policy. Should a Support Person not adhere to these expectations or attempt to play a direct and/or active role in any proceedings, the Title IX Coordinator, Hearing Officer or Investigator, at their discretion, may order the excusal of the Support Person from any meeting or proceeding.

AN. **"University Community"** is defined to mean University students, faculty, staff and third parties (visitors, volunteers, applicants for admissions or employment, vendors and contractors).

## IV. Reporting Sexual Harassment and OSM

### A. Reporting to the Police

Individuals who suffer or witness an incident involving Sexual Harassment or OSM are encouraged to report the incident to law enforcement. Reporting to law enforcement does not preclude an individual from also reporting the incident to the University. Reports made to the University and law enforcement may be pursued simultaneously, though the outcome of one Investigation does not determine the outcome of the other. In addition, University Police may defer to another law enforcement agency (typically city or county law enforcement) based on the nature and location of the incident.

University Police can assist individuals in reporting an incident of Sexual Harassment or OSM. University Police are also Responsible Employees under this Policy and will forward the report to OIIE, regardless of whether the incident constitutes a crime under the law. Information on how to contact University Police can be found in Appendix B of the Grievance Procedures.

### B. Reporting to the University

Making a report of Sexual Harassment or OSM to the University means reporting allegations to the Title IX Coordinator.  All persons are encouraged to report Sexual Harassment and OSM promptly.  Reports can be made in order to request Supportive Measures or to pursue a Formal Complaint.  Supportive Measures are available regardless of whether a Formal Complaint is pursued.  Reports can be made at any time by completing the Sexual Harassment and OSM report form.  Information on how to contact the Title IX Coordinator can be found in the Appendix A of the Grievance Procedures.

The University does not impose an affirmative time limit by which individuals must report Sexual Harassment or OSM.  However, if too much time has passed since the incident occurred, the delay may result in loss of relevant evidence and witness testimony.  The University may also not be able to investigate allegations against Responding Parties who have never been or are no longer affiliated with the University.

The Title IX Coordinator will promptly respond to reports of Sexual Harassment and OSM and take appropriate action consistent with this Policy and associated procedures.

The University may extend the time frames set forth in this Policy and associated procedures for good cause.  Exceptions to these time frames may vary for a number of reasons, including, but not limited to, depending on the complexity of the Investigation, volume of evidence, access to and/or responsiveness of relevant parties (including witnesses), the number of witnesses involved, and/or number of issues on appeal.

In situations where the University determines that a report raises a significant risk to public safety, the University may proceed with an Investigation even where the Reporting Party chooses not to proceed or participate in the Investigation. The University will communicate this decision to the Reporting

Party and Responding Party. In matters where the University determines that it must move forward regardless of whether the Reporting Party signs a Formal Complaint, the Title IX Coordinator does not become a party to the matter.

A Responsible Employee should, within 48 hours after becoming aware of an allegation of Sexual Harassment or OSM, make a report to OIIE. That office then takes action to address the situation consistent with this Policy (and associated procedures). Failure by a Responsible Employee to promptly report an incident of Sexual Harassment or OSM brought to their attention may result in discipline consistent with the University's policies and procedures.

**C. Other Reporting Options**

Inquiries or complaints concerning the application of Title IX or the University's handling of Sexual Harassment and OSM complaints may be referred to the Department of Education's Office of Civil Rights:

U.S. Department of Education Office for Civil Rights Philadelphia Office
The Wanamaker Building
100 Penn Square East, Suite 515
Philadelphia, PA 19107
(215) 656-8541
OCR.Philadelphia@ed.gov

Employee complaints may also be referred to the U.S. Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights. *See Appendix B of the Grievance Procedures.*

**A. Filing a Complaint**

The Reporting Party, whether a University student, University employee, or third party has the right to choose whether or not to file a Formal Complaint resulting in an Investigation. Upon receiving a report of Sexual Harassment or OSM, OIIE shall contact the relevant individual(s) to offer support resources, schedule an optional, in-person meeting in order to discuss Supportive Measures, and explain options regarding how to proceed.

In situations where the University determines that a report raises a significant risk to public safety, the University may proceed with an Investigation even where the Reporting Party chooses not to proceed or participate in the Investigation. The University will communicate this decision to all parties.

**B. Good Faith Requirement**

Reports or complaints of Sexual Harassment and OSM must be made in good faith because they are serious and have the potential to cause great harm if made without justification. Accordingly, it is a violation of the Policy for an individual to make a complaint or report in bad faith or without justification, or knowingly make false statements or knowingly submit false information during any investigation or proceeding. An individual found to have made a complaint or report in bad faith or without justification may be subject to disciplinary or other action.

## V. Reports Involving Minors or Suspected Child Abuse and Neglect

Towson University is committed to protecting the safety and welfare of children who come in contact with the University Community. See TU policy 06-01.50, Policy on the Reporting of Suspected Child Abuse and Neglect. Procedures to file a report can also be found in that policy.

The President has designated the TUPD Police Chief to receive oral and written reports of suspected child abuse or neglect from employees, students, and others at the institution. If you have any concerns or doubts as to whether to report an incident, feel free to direct any questions to Child Protective Services or consult with the TUPD Chief of Police. During non-business hours, contact the Towson University Police Department via the non-emergency telephone number.

## VI. Responsible Executive and Office:

Responsible Executive:
Title IX Coordinator

Responsible Office:
Office of Inclusion and Institutional Equity (OIIE)

## VII. Notice of Nondiscrimination

### A. Content

The University will publish a notice of nondiscrimination that contains the following content:

1. Title IX prohibits the University from discriminating on the basis of sex in its education program and activities;

2. Questions about the administration of Title IX at the University should be directed to the University's Title IX Coordinator or the United States Office for Civil Rights ("OCR") (information on the OCR can be found in Appendix B of the Grievance Procedures, as it may be amended from time to time, and on the OIIE website); and

3. The Title IX Coordinator's and other relevant OIIE staff member's title, office address, telephone number and email address. The University's web site shall be kept up to date with the name of its current Title IX Coordinator.

### B. Dissemination of Notice

The notice will be widely distributed to all students, employees, applicants for admission and employment, and other relevant persons. The notice must be prominently displayed on the University's web site and at various locations throughout its campus, and must be included in publications of general distribution that provide information to students and employees about the University's resources and policies. The notice should be available and easily accessible on an ongoing basis.

## VIII. University Action Upon Notice of Alleged Sexual Harassment and OSM

Once the University receives notice of an allegation of a violation of this Policy, it will take prompt action, in accordance with its internal Title IX procedures (https://www.towson.edu/inclusionequity/titleix/index.html). This obligation applies to reports of violations of the Policy regardless of whether a parallel law enforcement Investigation or action is pending or whether a Formal Complaint is filed.

University action typically includes, as appropriate:

A. Outreach to the Reporting Party;

B. Initial review;

C. Intake meeting;

D. Review of the Formal Complaint, if filed;

E. Notice to both Parties;

F. Supportive Measures to both parties;

G. Investigation;

H. Hearing; and

I. Notice of finding to both parties (including the right to appeal).

## IX. Resources and Immediate and Ongoing Assistance

OIIE maintains a list of resources and procedures for immediate and ongoing assistance following an incident of Sexual Harassment and OSM. They are available online at the University website on Sexual Violence Prevention and Resources (https://www.towson.edu/inclusionequity/titleix/index.html) and include:

A. Information about existing confidential and non-confidential resources, health, mental health, victim advocacy, legal assistance, visa and immigration assistance, student financial aid and other resources available for individuals affected by Sexual Harassment and OSM (both within the University and in the larger community) is available on OIIE's website. Such resources include, without limitation, Sexual Assault centers, victim advocacy offices, women's centers, health centers, nearby hospitals which offer Sexual Assault Forensic Exam ("SAFE") exams and help in obtaining medical attention, including transporting the Reporting Party to the nearest designated hospital; and counseling for mental health resources by the University and off campus resources available, other victim service entities and/or the nearest State designated rape crisis program;

B. Information about options for, available assistance in, and how to request changes to academic, living, transportation and working situations, and/or other Supportive Measures, as applicable, is available on OIIE's website. Supportive Measures will be provided if requested and reasonably available;

C. When a student or employee reports to the University that they have experienced Sexual Harassment or OSM, the Title IX Coordinator (or their designee) will provide the student or employee an explanation (available on OIIE's website) of their rights and options (e.g., options to notify law enforcement and/or campus authorities, including the right to be assisted by campus authorities in notifying such authorities; guidance in preservation of evidence; encouragement to obtain immediate medical help; obtaining and/or enforcing no contact and/or protective orders; etc.); and

**D.** Information on external options for reporting Sexual Harassment and OSM, as they may be amended from time to time, including local law enforcement, the Equal Employment Opportunity Commission (for Title VII employment discrimination matters), the U.S. Department of Education's OCR. The relevant contact information for the aforementioned external reporting options are available as Appendix B of the Grievance Procedures and on OIIE's website.

## x. General Process

### A. Preservation of Evidence

Individuals who have experienced Sexual Harassment or OSM should take steps to preserve evidence that may aid in any administrative action and/or criminal prosecution that may result. Examples of items that may serve as evidence include any recorded media such as voice mails, e-mails, text messages, Facebook or other social media messaging, and any other notes, writings, correspondence etc. that may be relevant to the case. Depending on the situation, clothing worn or other items which may serve as evidence should be preserved in their original state. Do not disturb the location where the alleged Sexual Harassment or OSM occurred, as police may want to photograph the scene upon their arrival. Law enforcement may also want to photograph any injuries suffered by the parties. If any weapon was used or any object was used as a weapon, leave it in position and do not touch it until police arrive.

The University encourages any Reporting Party to get a prompt, hospital-provided Sexual Assault Forensic Exam ("SAFE"). SAFE procedures are offered free of charge at certain local hospitals (e.g., Mercy Hospital and Greater Baltimore Medical Center) and may be pursued anonymously. SAFE procedures focus on collecting evidence and typically involve a medical/forensic exam that includes a physical exam, genital exam, and collection of swabs and samples to preserve evidence. You can decline any portion of the exam you so choose. Evidence can be collected up to 120 hours after assault but the sooner it is done the more likely that useful evidence can be recovered. Prior to a SAFE exam, it is important not to bathe, shower, douche, or change one's clothes. Additional information about SAFE procedures can be found in Appendix C of the Grievance Procedures.

### B. Supportive Measures

Upon receiving a report of Sexual Harassment or OSM, the Title IX Coordinator will promptly contact Reporting Party to discuss availability of supportive measures, consider Reporting Party's wishes with respect to supportive measures, and inform Reporting Party of the availability of supportive measures with or without the filing of a Formal Complaint. **Supportive Measures** are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the parties before or after the filing of a Formal Complaint or where no Formal Complaint has been filed. Such measures are designed to restore or preserve equal access to the education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter Sexual Harassment and OSM. Supportive Measures provided to students may vary from those provided to employees, consistent with the University's policies and procedures, employment contracts, and bargaining agreements.

Examples of Supportive Measures MAY include, but are not limited to:

**1.** Assistance with access or referral to counseling and medical services;

**2.** Rescheduling of exams and assignments;

**3.** Providing alternative course completion options;

**4.** Arranging for class incompletes, a leave of absence, or withdrawal;

**5.** University-imposed leave or suspension;

**6.** Imposition of a campus "No-Contact Order";

**7.** Imposition of a campus "Denial of Access" issued by TUPD;

**8.** Change in class schedule, including the ability to drop a course without penalty or to transfer sections;

**9.** Change in work schedule or job assignment.

Upon an initial report of Sexual Harassment or OSM, OIIE shall, as appropriate, offer and implement reasonable Supportive Measures. Supportive Measures are offered on a case-by-case basis designed to support and meet the needs of the individuals involved relative to the specific allegations of Sexual Harassment or OSM in order to ensure their safety so that they may continue to access their education and/or workplace. Supportive Measures may be provided even if a Reporting Party does not ultimately file a Formal Complaint resulting in an Investigation.

Nothing precludes the University from removing a Responding Party from its education program or activity on an emergency basis, provided it undertakes an individualized safety and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Harassment justifies removal, and provides the Responding Party with notice and an opportunity to challenge the decision immediately following the removal. Nothing precludes the University from placing a non-student employee Responding Party on administrative leave during a grievance process.

### C. Notice of Allegations

Upon receipt of a Formal Complaint, the University will provide written notice to the known parties of the following:

**1.** the grievance process, including any informal process;

**2.** the allegations of Sexual Harassment or OSM, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview. (Sufficient details include the identities of the parties involved in the incident, if known, the conduct allegedly constituting sexual harassment, and the date and location of the alleged incident, if known.);

**3.** a statement that the Responding Party is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process;

**4.** that they may have an advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence; and

**5.** a statement alerting the parties that this Policy prohibits knowingly making false statements or knowingly submitting false information during the grievance process.

If the University decides to investigate additional allegations not included in the original notice, it will provide notice of the additional allegations to the parties.

The University will also:

6. provide written notice to any party whose participation is invited or expected of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings with a party, with sufficient time for the party to prepare to participate;

7. create an investigative report that fairly summarizes relevant evidence and, at least 10 days prior to a hearing, send to each party and the party's advisor, if any, the investigative report in an electronic format or a hard copy, for their review and written response;

8. describe the range of supportive measures available to both parties; and

9. include the procedures and permissible bases for appeals.

## D. The Right to an Advisor and a Support Person

All parties may have one Advisor of the party's choice, who may be, but is not required to be, an attorney, and one Support Person of the party's choice, at any meeting or proceeding during the grievance process.  At no time may a party have more than two individuals (consisting of one Advisor and one Support Person) present with them at any meeting or proceeding. A party must provide the Title IX Coordinator with written notice of the full name and contact information (physical and email address) of their Advisor and/or Support Person.

Pursuant to Md. Code Ann., Educ. § 11-601, the Maryland Higher Education Commission (MHEC) maintains a list of attorneys willing to advise current and former **Student** parties (who were enrolled as a student at the University at the time of the incident that is the basis of the Formal Complaint) pro bono or at reduced fees. Student parties may find more information at the MHEC Title IX Campus Sexual Assault Proceedings website (https://mhec.maryland.gov/Pages/Title-IX-Campus-Sexual-Assault-Proceedings.aspx).

Notwithstanding the limit of one Advisor and one Support Person, nothing herein precludes a party from seeking reasonable accommodations, including, but not limited to, the presence of sign-language interpreters at all meetings and proceedings during the grievance process. In such cases, individuals serving in such capacity are not counted as an Advisor or Support Person.

The extent to which the Advisor and Support Person may participate in any meeting or proceeding is set forth in Section III above and in the Grievance Procedures, and applies equally to both parties. While a party is not required to have an Advisor or Support Person, if a party does not have an Advisor present **at the live hearing**, the University will provide, without fee or charge to that party, an Advisor of the University's choice, who may be, but is not required to be, an attorney, to conduct cross-examination on behalf of that party. A party is never permitted to personally conduct cross-examination of another party or any witnesses.

## E. Alternative Resolution Process

The University may not require as a condition of enrollment or continuing enrollment, or employment or continuing employment, or enjoyment of any other right, waiver of the right to an investigation and adjudication of Formal Complaints. Similarly, the University may not require the parties to participate in an informal resolution process and may not offer an informal resolution process unless a Formal Complaint is filed. However, at any time prior to reaching a determination regarding responsibility the University may facilitate an informal resolution process, such as mediation, that does not involve a full investigation and adjudication, provided that the University –

1. Provides to the parties a written notice disclosing: the allegations, the requirements of the informal resolution process including the circumstances under which it precludes the parties from resuming a formal complaint arising from the same allegations, provided, however, that at any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the formal complaint, and any consequences resulting from participating in the informal resolution process, including the records that will be maintained or could be shared; and

2. Obtains the parties' voluntary, written consent to the informal resolution process; and

3. Does not offer or facilitate an informal resolution process to resolve allegations of Sexual Assault, Sexual Coercion, or that an employee sexually harassed a student.

   Subject to the above referenced criteria, mediation or other informal mechanisms for resolving a Formal Complaint, by trained facilitators, will be used if a party requests an informal mechanism and all parties to the Formal Complaint, and the University agrees to proceed via an agreed upon alternative resolution process.

**F.** Formal Complaint and Investigation Process

Once the University receives a Formal Compliant of possible Sexual Harassment or OSM, it will take prompt action, consistent with this Policy and accompanying grievance procedures, to conduct an Investigation. If the conduct alleged in the Formal Complaint would not constitute Sexual Harassment, even if proved, did not occur in the University's education program or activity, or did not occur against a person in the United States, **then the University must dismiss the Formal Complaint with regard to that conduct for the purposes of Sexual Harassment under Title IX**; such a dismissal does not preclude the University from continuing to investigate and adjudicate an allegation of Sexual Harassment or OSM that is outside Title IX jurisdiction.

Upon dismissal of a Formal Complaint with regard to Sexual Harassment under Title IX, the University will promptly send written notice of the dismissal and reason(s) therefor simultaneously to the parties.  If the University decides to move forward with the investigation and adjudication of a Formal Complaint notwithstanding a lack of Title IX jurisdiction (e.g., the alleged violation of this Policy did not occur in education program or activity, or took place outside the United States, but involved members of the University community subject to this Policy), the notice of dismissal of the Formal Complaint regarding Sexual Harassment under Title IX will alert the parties that the University will nonetheless be moving forward with investigating the Formal Complaint as a violation of this Policy.  In such instances, both parties will receive the same notice and process set forth in this Policy as if there were Title IX jurisdiction.

The University may dismiss the Formal Complaint or any allegations therein regardless of Title IX jurisdiction, if at any time during the investigation or hearing: a Reporting Party notifies the Title IX Coordinator in writing that the Reporting Party would like to withdraw the Formal Complaint or any allegations therein; the Responding Party is no longer enrolled or employed by the University; or specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein. Upon dismissal, the University will promptly send written notice of the dismissal and reason(s) therefor simultaneously to the parties.

The University may consolidate Formal Complaints as to allegations of Sexual Harassment and OSM against more than one Responding Party, or by more than one Reporting Party against one or more Responding Parties, or by one party against the other party, where the allegations of Sexual Harassment or OSM arise out of the same facts or circumstances. Where a grievance process involves more than one Reporting Party or more than one Responding Party, references in this section to the singular "party," "Reporting Party," or "respondent" include the plural, as applicable.

**G. Due Process**

The University provides fundamental fairness to all parties involved. Among other things, the Reporting Party and Responding Party are provided notice of the charges and evidence, supportive measures, a fair and impartial investigation, the right to present information and identify witnesses relevant to their case, the right to an Advisor at meetings and proceedings, a live hearing with the ability to have an Advisor cross-examine witnesses, and to appeal the findings or dismissal of a Formal Complaint.  All parties have the right to be treated with dignity, respect, and sensitivity by University officials during all phases of the disciplinary proceedings.

**H. Grievance Procedures**

Specific investigation and hearing procedures may be found in the Grievance Procedures available at the University Title IX website (https://www.towson.edu/inclusionequity/titleix/index.html).

**I. Standard of Review**

The University investigates and adjudicates allegations of Sexual Harassment and OSM to determine whether the "preponderance of the evidence" indicates a Policy violation occurred. The preponderance of the evidence corresponds to an amount of evidence indicating a Policy violation is more than 50% likely. This is the same standard of review that is used in other disciplinary proceedings at the University for allegations of code of conduct violations involving discrimination or harm to another individual.

In such investigations and adjudications, legal terms like "guilt" and "innocence," and the "formal rules of evidence" are not applicable, but the University never assumes a Responding Party is responsible for the alleged conduct. Investigations and hearings are conducted to take into account the totality of all evidence available, from all relevant sources.

**J. Notice of Outcome**

The Hearing Panel will issue, simultaneously to both parties, a written determination regarding responsibility that includes:

**1.** Identification of the allegations potentially constituting Sexual Harassment or OSM;

**2.** Description of the procedural steps taken from receipt of the Formal Complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

**3.** Findings of fact supporting the determination;

**4.** Conclusions regarding the application of this Policy to the facts;

**5.** Statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility, any disciplinary sanctions the University imposes on the Responding Party, and whether remedies designed to restore or

preserve equal access to the education program or activity will be provided to the Reporting Party; and

6. Procedures and permissible bases for parties to appeal.

The determination regarding responsibility becomes final either on the date that the University provides the parties with the written determination of the result of the appeal (if any), or the date on which an appeal would no longer be considered timely.

**K.** Prompt Resolution

If the University determines that a potential Policy violation has occurred, it will take prompt and effective steps to eliminate the Sexual Harassment or OSM, prevent its recurrence, and address its effects.

The University endeavors to conclude its investigation, grievance and appeal process within six (6) months from the filing of a Formal Complaint. However, this process may be delayed based upon the following non-exclusive reasons:

1. Concurrent law enforcement activity;

2. The need for an accommodation(s) for a party;

3. Complexity of the case;

4. The number of parties or witnesses involved;

5. The development of new evidence that was previously unavailable;

6. University closure or academic breaks;

7. Medical emergencies; or

8. Absence of a party, advisor, support person or witness.

Absence of a party does not mean a party, advisor, support person or witness can indefinitely delay the process by refusing to cooperate. While the University will attempt to accommodate schedules in order to provide parties with a meaningful opportunity to exercise their rights, the University may proceed to conclusion in the absence of a party after making reasonable attempts to accommodate schedules.

In an instance where the University anticipates the resolution of the process will be temporarily delayed or a party has requested an extension of time for good cause, the University will provide written notice to both parties of the delay or extension of time and the reasons for the action.

## XI. Sanctions

**A.** Student Sanctions

If a Student Responding Party is found responsible for violating the Policy, the finding will be shared with the Office of Student Accountability and Restorative Practices (SARP) prior to the issuance of a written determination to determine whether disciplinary action is appropriate. With respect to Student Responding Parties, the Director of SARP, in accordance with the provisions of the Code of Student Conduct, is responsible for imposing disciplinary action.

Examples of possible student sanctions include:

1. Warning

2. Probation

3. Suspension

**4.** Expulsion

**5.** Withholding Diploma

**6.** Withholding Degree

**7.** Other Actions, including limitation on residential or co-curricular engagement such as removal from or limitations on access to a specific residence hall, or a co-curricular program.

**B. Staff Sanctions**

If a Staff Responding Party is found responsible for violating the Policy, the finding will be shared with the Office of Human Resources prior to the issuance of a written determination to determine whether disciplinary action is appropriate. With respect to Staff Responding Parties, any disciplinary action or corrective measures will be imposed by the appropriate supervisor, in consultation with the Office of Human Resources, OIIE, and other relevant administrators, as needed. This may include the following:

**1.** Verbal reminders;

**2.** Mandatory training;

**3.** Written reminders;

**4.** Reassignment of duties;

**5.** Unit transfers;

**6.** Letter of reprimand;

**7.** Suspension without pay;

**8.** Suspension pending charges of removal; and/or

**9.** Termination.

**C. Faculty Sanctions**

If a Faculty Responding Party is found responsible for violating the Policy, the finding will be shared with the Office of the Provost prior to the issuance of a written determination to determine whether disciplinary action is appropriate. With respect to Faculty Responding Parties, disciplinary action or corrective measures will be imposed by the appropriate supervisors, in consultation with the Office of the Provost,

OIIE, the Office of Human Resources and other relevant administrators, as needed. This may include the following:

**1.** Verbal reminders;

**2.** Mandatory training;

**3.** Reassignment of duties;

**4.** Written reminders;

**5.** Letters of reprimand or censure;

**6.** Suspension with or without pay; and/or

**7.** Termination (regardless of tenure status).

## XII. XII. Appeals

As to all appeals, the University will:

**A.** Notify the other party in writing when an appeal is filed and implement appeal procedures equally for both;

**B.** Ensure that the decision-maker(s) for the appeal is not the same person as the decision-maker(s) that reached the determination regarding responsibility or dismissal, the investigator(s), or the Title IX Coordinator;

**C.** Ensure that the decision-maker(s) for the appeal complies with the Policy and these Procedures;

**D.** Give both parties a reasonable, equal opportunity to submit a written statement in support of, or challenging, the outcome;

**E.** Issue a written decision describing the result of the appeal and the rationale for the result; and

**F.** Provide the written decision simultaneously to both parties.

Either party may appeal the dismissal of a Formal Complaint or any allegations therein and from a written determination regarding responsibility on the following grounds only:

**G.** A procedural error or irregularity that affected the outcome;

**H.** New evidence that was not reasonably available at the time the determination of responsibility or dismissal was made, that could affect the outcome of the matter; and/or

**I.** The Title IX Coordinator, Investigator(s), or Hearing Officer(s) had a conflict of interest or bias for or against Reporting Parties or Responding Parties generally or individual Reporting Party or Respondent that affected the outcome.

Either party may also appeal any sanction imposed in the written determination on the following grounds only: the severity or proportionality of the sanction.

Mere dissatisfaction with a dismissal, determination regarding responsibility, or sanction is not a valid basis for appeal.

Specific Appeal procedures may be found in the Grievance Procedures available at the University Title IX website (https://www.towson.edu/inclusionequity/index.html).

## XIII. Legal Sufficiency Review

The University will ensure that Sexual Harassment and OSM cases undergo an appropriate legal sufficiency review by counsel prior to issuing any written determination or appeal decision.

## XIV. Amnesty for Students Who Report Sexual Harassment or OSM

The University may offer amnesty for minor policy violations (such as underage drinking or recreational drug use) to encourage the reporting of Sexual Harassment or OSM by both individuals who have experienced Sexual Harassment or OSM and witnesses.

For example, the University may not take student conduct action (except for a mandatory intervention for substance abuse) for a violation of alcohol or drug use policies by a student who reports Sexual Harassment or OSM to the University or law enforcement or participates in a Sexual Harassment or OSM matter as a witness, if

the University determines (i) that the violation occurred during or near the time of the alleged conduct; (ii) the student made the report, or is participating in an Investigation as a witness, in good faith; and (iii) the violation was not an act that was reasonably likely to place the health or safety of another individual at risk.

## xv. Clery Act Compliance

In handling Sexual Harassment or OSM reports, the University complies with the requirements of the Crime Awareness and Campus Security Act of 1990 ("Clery Act") and its amendments. This includes its crime recording and reporting requirements.

## xvi. MOU with Local Law Enforcement

The University will pursue formalized agreements with (1) its local law enforcement agency and (2) a State designated rape crisis program. and/or federally recognized Sexual Assault coalition. Agreements with law enforcement agencies must comply with Title IX and clearly state when the University will refer a matter to a local law enforcement agency. Agreements with rape crisis or Sexual Assault programs must formalize a commitment to provide trauma-informed resources to Reporting Parties of Sexual Harassment and OSM.

## xvii. Training

### A. Prevention and Awareness Education

The University will develop and implement preventive education, directed toward both employees and students, to help reduce the occurrence of Sexual Harassment and OSM. At a minimum, these educational initiatives must contain information regarding what constitutes Sexual Harassment and OSM, definitions of Consent and prohibited conduct, the University's procedures, bystander intervention, risk reduction, and the consequences of engaging in Sexual Harassment and OSM. These educational initiatives shall be for all incoming students and new employees. Each institution also must develop ongoing prevention and awareness campaigns for all students and employees addressing, at a minimum, the same information.

### B. Training for Persons Involved in Sexual Harassment and OSM Cases

The University will ensure that Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process, receive training on the definition of Sexual Harassment and OSM, the scope of the University's Education Program or Activity, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes, as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.

The University will ensure that decision-makers receive training on any technology to be used at a live hearing and on issues of relevance of questions and evidence, including when questions and evidence about the Reporting Party's sexual predisposition or prior sexual behavior are not relevant.

The University will also ensure that investigators receive training on issues of relevance to create investigative reports that fairly summarize relevant evidence. Training materials must not rely on sex stereotypes and must promote impartial investigations and adjudications of Formal Complaints of Sexual Harassment and OSM.

### C. Public Awareness Events

The University is not required to investigate incidents involving Sexual Harassment or OSM shared by survivors during public awareness events such as "Take Back the Night." However, the University strives to make sure survivors are aware of any available resources and supports, as well as their option to request a University investigation of reports of Sexual Harassment or OSM made at these events and their option to report the same to law enforcement.

## XVIII. Privacy

A Reporting Party may request that their name or other information be kept private and not disclosed to alleged perpetrators or that no Investigation or disciplinary action be pursued to address the Sexual Harassment and OSM.

The University supports an individual's general interest in privacy and will maintain records in a discreet manner. However, there are situations in which the University must override a request for privacy in order to meet its obligations. The University will act reasonably and in good faith to limit such disclosures, maintain them in a secure manner, and only share them with individuals who are responsible for handling the University's response to the allegations of Sexual Harassment and OSM. To the extent practicable, the University will notify individuals of the information that will be disclosed, to whom it will be disclosed, and why.

In addition, Responsible Employees must report allegations or reports of Sexual Harassment and OSM to the Title IX Coordinator consistent with this Policy. Responsible Employees should inform the Title IX Coordinator of any requests for privacy when making their report.

## XIX. Confidentiality

Confidential information cannot be disclosed without authorization unless required by law or regulation. Confidential Employees are those who are generally exempt from reporting requirements. Examples include counseling center professionals, some health care providers, and clergy. Any disclosures made to Confidential Employees are exempted from disclosure obligations under federal and/or state law. As a result, Confidential Employees will not disclose identifiable information to the University's Title IX Coordinator or to any other person/entity without Consent, unless a legal exception applies.

Exceptions to a Confidential Employee's obligations may occur, for example, when they receive a report of child abuse or when disclosure is required to comply with a court order. As appropriate, Confidential Employees will inform those they counsel of procedures for reporting crimes on a voluntary, anonymous basis to the University Police for inclusion in the annual security report pursuant to the Clery Act.

More information regarding procedures related to confidentiality, including confidential resources, are available at Appendix C of the Grievance Procedures and at the University Title IX website (https://www.towson.edu/inclusionequity/titleix/index.html).

## XX. Recordkeeping

The University will maintain, for seven (7) years, records of: (a) Each investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript required, any disciplinary sanctions imposed on the Responding Party, and any remedies provided to the Reporting Party designed to restore or preserve equal access to the education program or activity; (b) Any appeal

and the result therefrom; (c) Any informal resolution and the result therefrom; (d) All materials used to train Title IX Coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process; and (e) Any actions taken, including whether supportive measures were provided, in response to a report or formal complain of Sexual Harassment, and the basis for its conclusion that its response was not deliberately indifferent.

### XXI. Campus Sexual Assault Climate Survey

At least every two (2) years, the University shall: (i) develop an appropriate Sexual Assault campus climate survey using nationally recognized best practices for research and climate surveys; and (ii) administer the Sexual Assault campus climate survey to students in accordance with the procedures set by the Maryland Higher Education Commission ("MHEC"). After completing the survey and consistent with MHEC procedures, the University shall submit to MHEC a report in accordance with the requirements set forth in Maryland Code Annotated, Education Article, Section 11-601(g).

## Related Policies:

USM Policy VI-1.60, Policy on Sexual Harassment (https://www.usmd.edu/regents/bylaws/SectionVI/VI160.pdf)

USM Policy VII-8.00, Policy on Grievances for Nonexempt and Exempt Staff Employees (https://www.usmd.edu/regents/bylaws/SectionVII/VII800.pdf)

USM Policy VII-8.05, Professional Conduct of Non-Exempt and Exempt Staff Employees (https://www.usmd.edu/regents/bylaws/SectionVII/VII805.pdf)

TU Policy 02-01.00, Policy on Appointment, Rank and Tenure of Faculty (https://www.towson.edu/about/administration/policies/02-01-00-policy-appointment-rank-tenure-faculty.html)

TU Policy 02-01.05, Employment of Lecturers (https://www.towson.edu/about/administration/policies/02-01-05-policy-appointment-rank-promotion-lecturers.html)

TU Policy 02-04.00, Responsibilities and Procedures of the Faculty Grievance and Mediation Committee and the Faculty Hearing Committee. (https://www.towson.edu/about/administration/policies/02-04-00-responsibilities-procedures-faculty-grievance-mediation-committee.html)

TU Policy 06-01.00, Policy Prohibiting Discrimination (https://www.towson.edu/about/administration/policies/06-01-00-policy-prohibiting-discrimination.html)

TU Policy 06-01.50, Policy on the Reporting of Suspected Child Abuse and Neglect (https://www.towson.edu/about/administration/policies/06-01-50-policy-reporting-suspected-child-abuse-neglect.html)

TU Policy 07-01.22, Separation for Regular Exempt Employees (https://www.towson.edu/about/administration/policies/07-01-22-separation-regular-exempt-staff-employees.html)

TU Policy 07-05.25, Disciplinary Actions for Employees (https://www.towson.edu/about/administration/policies/07-05-25-disciplinary-actions-employees.html)

TU Policy 07-06.30, Consensual Relations with Students
(https://www.towson.edu/about/administration/policies/07-06-30-consensual-relations-students.html)

Code of Student Conduct

**Approval Date:** June 27, 2018

**Effective Date:** June 27, 2018

**Amended Date:** September 12, 2019
August 14, 2020; January 25, 2023

**Approved By:** President's Council

**Signed By:** President's Council

## 8000 York Road
## Towson, MD 21252

📞 410-704-2000

📲 Sign up for text alerts

🅰 Translate

Copyright
© 2023

| Contact Us | Accessibility |
| Directions & Parking | Privacy |
| Work at TU | Clery Report |

A University System of Maryland Member Institution