# Grievance Procedures

Grievance Procedures for the Resolution of Sexual Harassment and Other Sexual Misconduct Complaints

## I. Purpose

These Procedures set forth Towson University's ("University" or "TU") administrative response to allegations or occurrences of Sexual Harassment and Other Sexual Misconduct under TU Policy 06-01.60- Policy on Sexual Harassment and Other Sexual Misconduct (the "Policy"). Please refer to the Policy for all definitions, which are explicitly incorporated herein by reference.

These Procedures provide for participation by both the Reporting Party (the person alleged to be the victim of conduct prohibited by the Policy) and Responding Party (the individual alleged to have engaged in conduct prohibited by the Policy) to any incident of alleged Sexual Harassment or Other Sexual Misconduct ("OSM") and also recognize their right to decline to participate in that process, including, without limitation, an Investigation. In the event of a conflict between these Procedures and the Policy, the Policy shall govern.

Information about University programs that can identify resources for victims as well as promote awareness and prevention of Sexual Harassment or OSM are available at www.towson.edu/TitleIX (https://www.towson.edu/TitleIX).

## II. Reporting

### A. Reporting to the University

The University must receive notice to respond effectively and prevent Sexual Harassment or OSM in the University community. Any person, including, but not limited to, the Reporting Party (the person alleged to be the victim of conduct that could constitute Sexual Harassment or OSM), may inform the University of allegations of Sexual Harassment or OSM against a Student, Staff member, Faculty member, or Third Party in the following ways:

1. Contact the Title IX Coordinator at the Office of Inclusion & Institutional Equity ("OIIE"):
a. Online: https://towson- advocate.symplicity.com/titleix_report/index.php/pid985046? (https://towson-advocate.symplicity.com/titleix_report/index.php/pid985046)
b. In-person or via regular mail: Administrative Building (AD 214) 7720 York Road Towson, Maryland 21252
c. Telephone: (410) 704-0203; or
d. Email: titleix@towson.edu

2. Contact a Responsible Employee within the University community, who will then, consistent with the Policy, inform the Title IX Coordinator. A Responsible Employee includes all University administrators, supervisors in non-confidential roles, faculty members, campus police, coaches, athletic trainers, resident assistants, and non-confidential first responders. Responsible Employees who learn of reports or allegations of Sexual Harassment or OSM should promptly notify the Title IX Coordinator. Responsible Employees are not designated university officials with authority to institute corrective measures on behalf of the University, but rather individuals identified by the University who will be responsible by virtue of their positions to inform the Title IX Coordinator of known or suspected incidents in accordance with University Policy.

EXHIBIT B

As described above, reports of Sexual Harassment or OSM may be submitted online, verbally or in writing at any time (including during non-business hours) by using the telephone number or electronic mail address, or by mail to the office address, listed for the Title IX Coordinator. No particular method or format is required. A report should include as much pertinent information as possible (e.g., the time and place of the incident, a complete description of what occurred, the identity or a description of the Responding Party (if known), the names of potential witnesses (if known), etc.). Sexual Harassment and OSM may also be reported anonymously. Such anonymous reporting, however, may limit the University's ability to address the alleged Policy violation, to prevent it reoccurrence or to reduce its effects.

Upon receipt of any report of Sexual Harassment or OSM, the Title IX Coordinator will make an immediate assessment of the risk of harm to the parties or to the University community and will take steps necessary to address any risks. These steps may include working with other campus offices to facilitate Supportive Measures designed to promote the safety of the parties and the University community.

The University recognizes that while Responsible Employees have a duty to report Title IX violations, a Reporting Party's decision whether to report Sexual Harassment or OSM and participate in an Investigation is a personal decision that may evolve over time. While prompt reporting is strongly encouraged, there is no time limit for reporting Sexual Harassment or OSM. The Title IX Coordinator will coordinate with appropriate University departments and offices to provide support and assistance to each Reporting Party in making important decisions related to reports of Sexual Harassment or OSM.

Consistent with the goal of safety for all community members, the University works to respect a Reporting Party's autonomy in making their own personal decisions after reporting Sexual Harassment or OSM. While a complaint of Sexual Harassment or OSM may be filed at any time; delay in reporting may limit the ability of OIIE to comprehensively investigate a complaint of Sexual Harassment or OSM.

## B. Right to Report or Decline to Report to Law Enforcement

The University encourages those in an emergency situation, including when they have experienced or witnessed Criminal Sexual Misconduct, to call 911. A person who has experienced or witnessed Criminal Sexual Misconduct may also choose to make a report to the University to pursue resolution under these Procedures or make a report. Contact Towson University Police ("TUPD") at (410) 704-4444 or other local law enforcement.

In appropriate circumstances, the Title IX Coordinator can assist someone with the notification process. A Reporting Party/person who reports to law enforcement is strongly encouraged to also report to the University/Title IX Coordinator. This allows the University to pursue appropriate and timely action. Please do not assume that law enforcement will necessarily notify University officials. Reporting to police and/or pursing criminal charges are separate and distinct processes. The University's process is not a law enforcement proceeding or civil or criminal legal proceeding.

## C. Confidential Employees

As described in the Policy, a Confidential Employee is (1) any employee who is a licensed medical, clinical, or mental-health professional (i.e., physicians, nurses, physicians' assistants, psychologists, psychiatrists, professional counselors, and social workers (and those performing services under their supervision) ("Health Care Providers")) or pastoral care providers acting in their professional role in the provision of services; (2) any employee providing administrative, operational and/or related support for such Health Care Providers in their performance of such services or providing individual intake, advocacy, and referrals to clinical and counseling services; and (3) any individual acting in an approved confidential role

as so designated by the Title IX Coordinator. Confidential Employees are not required to report any information regarding an incident of Sexual Harassment or OSM to the Title IX Coordinator.

Confidential Employees should inform Reporting Parties of their right to file a report or complaint with the University and/or a separate complaint with campus or local law enforcement. They typically identify campus resources for counseling, medical, or professional support. Confidential Employees may assist with filing such reports or complaints. They can also explain that the Policy protects against retaliation and the University works to respond appropriately to it and prevent its recurrence.

## III. Outreach to the Reporting Party

Upon receipt of a report of Sexual Harassment or OSM, OIIE will ensure that the Reporting Party is provided with a copy of the Policy, informed of their rights and responsibilities, and given the opportunity to participate in an Intake Meeting with the Title IX Coordinator to discuss available options and resources. The Title IX Coordinator will promptly contact the Reporting Party to discuss the availability of Supportive Measures, consider the Reporting Party's wishes with respect to Supportive Measures, inform the Reporting Party of the availability of Supportive Measures with or without the filing of a Formal Complaint, and explain to the Reporting Party the process for filing a Formal Complaint.

## IV. Intake Meeting

During the Intake Meeting, the Title IX Coordinator will provide information about the Policy and these Procedures. The Title IX Coordinator will also review the Reporting Party's rights and responsibilities associated with the process, including:

- Right to seek medical treatment, if applicable (e.g., SAFE exam);
- Right to file a report with law enforcement or decline to do so;
- Right not to be retaliated against (including the University's prohibition against retaliation);
- Right to request privacy and provide input about the University's forward action (including a potential investigation);
- Right to have an Advisor, who may be, but is not required to be, an attorney, and a Support Person present during the process consistent with the Policy;
- The process for filing a Formal Complaint; and
- Other additional rights and responsibilities based on the specific circumstances.

Based on the available information, the Title IX Coordinator will assess the Reporting Party's immediate safety and well-being and make appropriate referrals (e.g., to medical care, mental health counseling, etc.). The Reporting Party will receive information about community and campus resources and services. Supportive Measures that are appropriate can be discussed and arranged. They will also have an opportunity to ask questions and seek additional information.

While the University cannot force a Reporting Party to meet with the Title IX Coordinator for an Intake Meeting, such a meeting enables the University to conduct a thorough Initial Review, described above, of the report/complaint and take appropriate action. Where a student does not wish to meet with the Title IX Coordinator the University will proceed with assessing the report and determining whether additional action is necessary regardless of participation from the Reporting Party.

## A. Requests for Privacy and Decision to file a Formal Complaint

A Reporting Party may request that their name or other information be kept private and not disclosed to alleged perpetrators or that no Formal Complaint or disciplinary action be pursued to address the Sexual Harassment or OSM. The University evaluates such requests for privacy in light of its responsibility to provide a safe and secure environment.

While Anonymous Complaints are considered and the University respects privacy considerations, there are situations in which the University must override a request for privacy in order to meet its obligations. The University also must necessarily weigh the safety of the University Community and other factors, as noted above, in determining whether to proceed with an Investigation.

The University will maintain a confidential record of reports of Sexual Harassment or OSM and related evidence, documents, records, and information pertaining to the investigation and resolution of the complaints. The records will be maintained in accordance with applicable policies, procedures and legal requirements. Records may be subpoenaed by law enforcement authorities as part of a parallel investigation into the same conduct, or required to be produced through other compulsory legal process.

The University's ability to fully investigate and respond to a complaint may be limited if the Reporting Party requests that their name not be disclosed to the Responding Party or declines to participate in the grievance process. If a Reporting Party requests their name or other identifiable information not be disclosed and/or that no further action be taken, the Title IX Coordinator will seek to honor such requests, balancing the Reporting Party's wishes for privacy with the University's obligation to provide a safe and non-discriminatory environment for all members of the University community.

## B. Supportive Measures

Upon receiving a report of Sexual Harassment or OSM, the Title IX Coordinator may impose Supportive Measures to protect the University Community. After an initial report of Sexual Harassment or OSM, OIIE shall, as appropriate, offer and implement reasonable Supportive Measures to all parties. Supportive Measures are reasonable actions offered on a case-by-case basis designed to support and meet the needs of the individuals involved relative to the specific allegations of Sexual Harassment or OSM in order to ensure their safety so that they may continue to access their education and/or workplace. Supportive Measures may be provided even if a Reporting Party does not ultimately file a Formal Complaint resulting in an Investigation.

If a Reporting Party does not file a Formal Complaint and Supportive Measures are instituted, the time period during which the Supportive Measures are provided shall be determined on a case-by-case basis within the discretion of OIIE.

The University applies Supportive Measures as appropriate to ensure an individual's safety and well- being, as well as their ability to participate in campus academic and employment activities. Supportive Measures are not intended to be punitive nor are they intended to be permanent resolutions.

The Title IX Coordinator manages and oversees the provision of Supportive Measures on behalf of the University. The University will take appropriate, responsive, and prompt action to enforce Supportive Measures and to respond to any reports about the inadequacy or failure of another University community member to abide by the Supportive Measures. Supportive Measures may be withdrawn or amended by the Title IX Coordinator.

**1. EXAMPLES OF SUPPORTIVE MEASURES**

Possible Supportive Measures may include actions from the following list, which is not intended to be exhaustive or limit the options available in a given case:

- Assistance with access or referral to counseling and medical services;
- Rescheduling of exams and assignments;
- Providing alternative course completion options;
- Arranging for class incompletes, a leave of absence, or withdrawal;
- University-imposed leave or suspension;
- Imposition of a campus "No-Contact Order";
- Imposition of a campus "Denial of Access" issued by TUPD;
- Change in class schedule, including the ability to drop a course without penalty or to transfer sections;
- Change in work schedule or job assignment.

### 2. ADMINISTRATIVE LEAVE FOR STAFF OR FACULTY

After an individualized safety and risk analysis, a Staff or Faculty Responding Party may be placed on an Administrative Leave or may be restricted from University Property (Denial of Access) as Supportive Measure where the Responding Party poses an immediate threat to the physical health or safety of the Reporting Party (or any other individual) prior to the conclusion of a grievance process (or even where no grievance process is pending). In such cases, the Responding Party will receive notice and an opportunity to challenge the decision. An "Administrative Leave" is defined consistent with applicable University policies and procedures outlining disciplinary actions against staff and faculty.

In cases involving an allegation of Sexual Harassment or OSM against a staff or faculty member, Administrative Leave may be initiated by the Vice President of Human Resources, Provost, or a designee, in consultation with the Office of the Vice President and General Counsel and the Title IX Coordinator.

### 3. EMERGENCY SUSPENSION FOR STUDENTS

After an individualized safety and risk assessment, a student Responding Party may be placed on an Emergency Suspension or otherwise restricted from University Property as an Supportive Measure where the Responding Party poses an immediate threat to the physical health or safety of the Reporting Party (or any other individual) prior to the conclusion of a grievance process (or even where no grievance process is pending). In such cases, the Responding Party will receive notice and an opportunity to challenge the decision. An Emergency Suspension may also be referred to as an "Interim Suspension." For the purposes of these Student Procedures, "Emergency Suspension" is defined consistent with the Code of Student Conduct.

# V. Filing a Formal Complaint

In order for the University to investigate allegations of Sexual Harassment or OSM, a Reporting Party must file a Formal Complaint. A Formal Complaint is a document filed by the Reporting Party with OIIE or signed by the Title IX Coordinator alleging Sexual Harassment or OSM against a Responding Party and requesting that the University investigate the allegation of Sexual Harassment or OSM. At the time of filing a Formal Complaint, a Reporting Party must be participating in or attempting to participate in an education program or activity of the University for purposes of Title IX jurisdiction. A "document filed by the Reporting Party" means a document or electronic submission that contains the Reporting Party's physical or

digital signature, or otherwise indicates that the Reporting Party is the person filing the Formal Complaint. A Reporting Party may withdraw a Formal Complaint at any time by notifying the Title IX Coordinator in writing of the Reporting Party's desire to do so.

When appropriate, in consideration of the safety and wellbeing of the campus community, the University, through the OIIE, retains the right to initiate a Formal Complaint on its own, independent of any individual's decision or request about how they would prefer the University proceed. In such instances, the Title IX Coordinator will sign the Formal Complaint alleging the Sexual Harassment or OSM, and will communicate this decision to all parties. Where the Title IX Coordinator signs a Formal Complaint, the Title IX Coordinator is not a Reporting Party or otherwise a party to any grievance proceeding.

At OIIE's discretion, multiple Formal Complaints may be consolidated in one investigation if the information related to each incident is relevant in reaching a determination. Matters may be consolidated where they involve multiple Reporting Parties, multiple Responding Parties, or related conduct involving the same parties, provided that it does not delay the prompt investigation and resolution of complaints.

# VI. Dismissal of Formal Complaints

## A. Mandatory Dismissal

If the conduct alleged in the Formal Complaint would not constitute Sexual Harassment, even if proved, did not occur in the University's education program or activity, or did not occur against a person in the United States, then the University must dismiss the Formal Complaint with regard to that conduct for the purposes of Sexual Harassment under Title IX; such a dismissal does not preclude the University from continuing to investigate and adjudicate an allegation of Sexual Harassment or OSM that is outside Title IX jurisdiction. Upon dismissal of a Formal Complaint with regard to Sexual Harassment under Title IX, the University will promptly send written notice of the dismissal and reason(s) therefor simultaneously to the parties.

If the University decides to move forward with the investigation and adjudication of a Formal Complaint involving members of the University community notwithstanding a lack of Title IX jurisdiction (e.g., the alleged violation of Policy did not occur in education program or activity, or took place outside the United States), the notice of dismissal of the Formal Complaint regarding Sexual Harassment under Title IX will alert the parties that the University will nonetheless be moving forward with investigating the Formal Complaint as a violation of this Policy. In such instances, both parties will receive the same notice and process set forth in the Policy and these Procedures as if there were Title IX jurisdiction.

## B. Permissive Dismissal

The University may dismiss the Formal Complaint or any allegations therein regardless of Title IX jurisdiction, if at any time during the investigation or hearing: a Reporting Party notifies the Title IX Coordinator in writing that the Reporting Party would like to withdraw the Formal Complaint or any allegations therein; the Responding Party is no longer enrolled or employed by the institution; or specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein. Upon dismissal, the University will promptly send written notice of the dismissal and reason(s) therefor simultaneously to the parties.

# VII. Notice of Investigation/Allegations

Upon receipt of a Formal Complaint, OIIE will provide written notice to the all parties who are known:

A. Of the grievance process, including any informal process;

B. Of the allegations of Sexual Harassment or OSM, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview.

   i. "Sufficient details" include the identities of the parties involved in the incident, if known, the conduct allegedly constituting Sexual Harassment, and the date and location of the alleged incident, if known;

C. Of a statement that the Responding Party is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process;

D. That the parties may have an Advisor of their choice, who may be, but is not required to be, an attorney, and may inspect and review evidence;

E. That the parties may have a Support Person of their choice;

F. That knowingly making false statements or knowingly submitting false information during the grievance process is prohibited; and

G. That if the University decides to investigate additional allegations not included in the original notice, it must provide notice of the additional allegations to the parties whose identities are known.

The Notice will also inform the parties of their right to attend (separately) an initial meeting with an OIIE Investigator. At this meeting, the parties may ask the Investigator questions and learn more about the grievance processes. The University may proceed with an Investigation regardless of whether a party decides to attend an initial meeting.

# VIII. Participation

Throughout the process, the Title IX Coordinator, Investigator(s), and other University representatives will communicate and correspond directly with the parties. The Parties are responsible for ensuring that their Advisor and/or Support Person acts consistent with the definition of an Advisor and Support Person set forth in the Policy and the rules and expectations provided below. Parties are also responsible for making sure appropriate authorization exists (e.g., authorization related to the Family Educational Rights and Privacy Act ("FERPA")) for the University to communicate the non-party participation requirements below to any Advisor or Support Person.

## A. Advisors and Support Persons

Both a Reporting Party (the person bringing the complaint) and a Responding Party (the person reported to have engaged in the prohibited conduct) are given the opportunity to have support or advice through the process. Both parties may have up to two individuals accompany them to any meetings, interviews, or hearings related to the matter — one (1) Advisor and one (1) Support Person. A party must provide the Title IX Coordinator with full name and contact information (physical and email address) of their Advisor and/or Support Person in advance of any meeting or proceeding. All Advisors and Support Persons must closely review the University's Policy on Sexual Harassment and Other Sexual Misconduct and these Procedures. The Policy prohibits retaliation against any individuals filing a complaint or participating in the investigation of the complaint. Advisors and Support Persons are also protected by and subject to this retaliation prohibition. This means an Advisor or Support Person may not retaliate against any person participating in this process, nor can anyone retaliate against an Advisor or Support Person. To report possible retaliation, please contact the Title IX Coordinator at titleix@towson.edu.

Notwithstanding the limit of one Advisor and one Support Person, nothing herein precludes a party from seeking reasonable accommodations, including, but not limited to, the presence of sign-language interpreters at all meetings and proceedings during the grievance process. In such cases, individuals serving in such capacity are not counted as an Advisor or Support Person.

1. Rules and expectations regarding the role of the Advisor:
   i. The Advisor is a person chosen by either the Reporting Party or Responding Party who may be, but is not required to be, an attorney, who provides support, guidance, assistance, and/or advice to the individual, and who may inspect and review evidence directly related to the allegations in the Formal Complaint.
   ii. The Advisor may not be someone who is otherwise involved in the situation which gave rise to the complaint, such as someone who could become a witness. Similarly, in cases involving multiple parties, the Advisor cannot be another party.
   iii. It is the responsibility of the Reporting Party and Responding Party to present oral and written information in all meetings and proceedings on their own behalf. An Advisor may be present during any meeting or proceeding, and may consult with their advisee quietly or in writing, or during breaks, but may not speak on behalf of the advisee to the Investigator or Hearing Officer. An Advisor may not submit any written requests (including appeals) on behalf of a party. An Advisor may ask process-related questions of an Investigator or Hearing Officer, but may never ask questions of their advisee on the record during a meeting or proceeding, and may not offer facts or submit argument on behalf of their advisee.
   iv. During the live hearing only, a party's Advisor is permitted to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility. An Advisor is a party's proxy during the hearing; the Advisor is not "representing" the party. The role of the Advisor is to relay their advisee's desired questions to the other party and witnesses.
   v. Advisors are expected to handle themselves in a respectful and non-abusive manner during all proceedings. Examples of questioning that may be harassing or abusive include, but are not limited to,: (a) yelling or screaming at the other party or a witness; (b) standing and leaning into the other party's or a witness' personal space; or (c) asking argumentative questions designed to berate or belittle the other party or a witness.
   vi. Advisors are not permitted to raise any objections, argue in support of a party's position, or otherwise "represent" a party. Any questions posed by the Advisor to their advisee, or factual assertions or argument provided by the Advisor to an Investigator or Hearing Officer will not be considered and will be redacted from the record.
   vii. The University's communication during the process will be primarily with the parties, not with the Advisor directly. The University will copy an Advisor on communications if requested by the party. A complainant or respondent may use different Advisor(s) at various stages in the process, especially if their chosen individual cannot be available for a scheduled meeting, interview, or hearing. The University will work to reasonably accommodate the Advisors' schedules, but will not unnecessarily delay the process due to the Advisors' conflicts.
   viii. This grievance process involves an alleged violation of University policy and is not a criminal or legal proceeding. Formal legal rules, including, but not limited to, any rules of evidence and procedure, are not applicable.
   ix. An Advisor may be removed or replaced if they unreasonably delay the process, and/or their presence is disruptive, obstructive, or otherwise interferes with the

University's handling of the matter. In such a case, the Reporting Party or Responding Party may seek another Advisor.

2. Rules and expectations regarding the role of a Support Person:

   i. The Support Person is someone other than an Advisor whose presence provides support to a party, and who is permitted to accompany a party in meetings and proceedings. Examples include, but are not limited to, a family member, friend, faculty member or staff member.

   ii. The Support Person may not speak on behalf of the individual, directly participate in the proceedings, or submit any written requests (including appeals) on behalf of the individual.

   iii. The Support Person may not be someone who is otherwise involved in the situation which gave rise to the complaint, such as someone who could become a witness. Similarly, in cases involving multiple parties, the Support person cannot be a party.

   iv. A Support Person may be removed or replaced if they unreasonably delay the process, and/or their presence is disruptive, obstructive, or otherwise interferes with the University's handling of the matter. In such a case, the Reporting Party or Responding Party may seek another Support Person.

## B. Witnesses

Witnesses are individuals who have factual information about an alleged violation of Policy. The University expects witnesses to provide true and accurate information. Anyone can be a witness if they have relevant information. All witnesses, including the Reporting Party and Responding Party, are expected to respond to questions during any meeting or proceeding on their own behalf. Witnesses should understand that some evidence may not be deemed relevant to an alleged Policy violation and therefore excluded from consideration. Witnesses are also protected from retaliation.

# IX. Investigation

## A. Investigative Process

An Investigation is an impartial, fact-gathering process. It is intended to provide the parties an opportunity to share their perspectives and identify information they believe relevant to the allegations of Sexual Harassment or OSM.

The Title IX Coordinator will designate an Investigator(s) to conduct a prompt, thorough, fair, and impartial investigation. The Investigator interviews the parties and/or witnesses separately. They also gather physical evidence, such as documents, communications (including correspondence, email, text messages, social media, or other digital information), recordings (including audio and video), and other records, as appropriate and available. The Investigator is also responsible for drafting the investigative report that fairly summarizes the relevant evidence.

## B. Evidence

Evidence is relevant when a reasonable person would likely accept the information as having probative value about the underlying allegations. An Investigator may exercise discretion in not interviewing a witness or considering a piece of evidence that the Investigator deems is reasonably likely to lack relevance to the allegations of Sexual Harassment or OSM.

## C. Special Considerations Regarding Evidence of Prior Sexual History

Information related to the prior sexual history of either party is generally not relevant to the determination of a Policy violation. Accordingly, the University will not use an individual's sexual history for purposes of illustrating their character or reputation. However, prior sexual history between the parties may be relevant in very limited circumstances. For example, where there was a prior or ongoing consensual relationship between the parties and where Consent is at issue, evidence as to the parties' prior sexual history may be relevant to assess the manner and nature of communications between the parties and whether Consent occurred. The Investigator will determine the relevance of prior sexual history and inform the parties if information about the parties' prior sexual history is deemed relevant.

## D. Investigative Report

At the conclusion of the Investigation, the Investigator will draft a written investigative report summarizing the relevant evidence gathered during the investigation.

Prior to the completion of the investigative report, the Investigator will send to each party and the party's advisor, if any, the evidence subject to inspection and review in electronic format or hard copy, and the parties will have ten (10) calendar days from the date notice is sent to submit a written response, which the Investigator will consider prior to completion of the investigative report.

After receipt of any written response to the evidence, the Investigator will create an investigative report that fairly summarizes relevant evidence. The investigative report will be sent in electronic format or hard copy to each party and the party's advisor, if any, for a party's review and written response at least ten (10) calendar days prior to a hearing or other time of determination regarding responsibility.

# X. Hearing Rules and Procedures

## A. The Hearing Panel

The live hearing will take place in front a Hearing Panel that will determine whether, by a preponderance of the evidence, a Policy violation occurred. The Hearing Panel will be comprised of three (3) Hearing Officers appointed by the Title IX Coordinator from a pool of trained faculty, staff, administrators, and/or outside experts, one of which shall be designated by the Title IX Coordinator as the Chair of the Hearing Panel (the "Chair"). The Chair shall facilitate the hearing; verbally exclude non-relevant questions and testimony during the hearing; and take reasonable steps to maintain order and decorum. All three (3) Hearing Officers will review the Investigative Report, along with the relevant evidence relied upon in the Investigative Report, prior to the hearing, and all will be voting members for purposes of deliberations after the conclusion of the hearing.

B. Notice of Hearing

The Title IX Coordinator will provide a written Notice of Hearing to all parties simultaneously at least ten (10) calendar days prior to the hearing, which will include the purpose of the hearing, the makeup of the Hearing Panel, the participants (including witnesses), the date, time and location of any pre-hearing conference, and the date, time and location of the live hearing. Within 24 hours of receipt of the notice, either party (not an Advisor or Support Person) may assert to the Title IX Coordinator, in writing, that a Hearing Officer has a conflict of interest or bias. If the Title IX Coordinator determines that such a conflict or bias exists, the Title IX Coordinator will replace the Hearing Officer with an alternate from the pool. The Title

IX Coordinator's decision is final. A written Notice of Hearing including the purpose of the hearing and the date, location, and time will also be provided to all witnesses expected to testify during the live hearing.

## C. Pre-hearing Conference

The Title IX Coordinator may, in their discretion, coordinate a pre-hearing conference that includes the Chair of the Hearing Panel and the parties and the parties' Advisors (and Support Persons, if any).

During the pre-hearing conference, if any, the Chair of the Hearing Panel will:

1. Hear and rule on any evidentiary challenges raised by parties;
2. Identify witnesses who will appear at the hearing;
3. Review any pre-submitted cross-examination question for relevance (optional for parties to pre-submit);
4. Conduct an overview of rules and procedures for the hearing;
5. Answer hearing process-related questions;
6. Address requests for an accommodation due to a disability; and
7. Test any technology to be used during the hearing.

## D. Hearing Procedure

1. 1. The live hearing will begin at the pre-scheduled time and location (or virtually) as provided in the Notice of Hearing. Hearings are not open to the public.
   a. If conducted on campus:
   i. Prior to the start of the hearing the parties will report to their individually assigned private conference rooms (if requested). The Hearing Panel will be in a separate room nearby.
   ii. The parties will have access to technology to enable them to see and hear one another and the Hearing Panel in real-time if separate rooms are requested.
   iii. Witnesses will report to the Hearing Chair and be seated outside the hearing room. The Hearing Chair will notify the witnesses when they are permitted to enter the hearing room to provide testimony.
   b. If conducted virtually:
   i. The Hearing Chair will convene the hearing by virtually connecting the Hearing Panel with the parties.
   ii. Witnesses will report remotely via email or other electronic means to the Hearing Chair. At the appropriate time during the hearing, the Hearing Chair will remotely notify witnesses via email or other electronic means when they will be permitted virtually connect into the hearing to provide testimony.
2. The parties must each be accompanied by one Advisor, who may or may not be an attorney, for the purpose of cross-examining the other party and witnesses.
3. The Chair will provide to the parties and their Advisor (and Support Person, if any) a brief overview of the hearing process and expectations for conduct during the hearing.
4. The parties and their Advisors (and Support Person, if any) must agree to abide by those expectations or risk removal from the hearing. Expectations for Advisors and Support Persons may be found in the Policy and Section VIII.A above. If an Advisor is

removed for failure to abide by the hearing rules, the hearing will continue after a new Advisor is appointed by the University, who may or may not be an attorney.

5. The parties and all witnesses will testify in the same room as the Hearing Panel or virtually. The parties will be able to view the testimony of each other and non-party witnesses either in-person or virtually as pre-determined.

6. Non-party witnesses will not be present for or hear the testimony of each other or other witnesses.

7. All witnesses, including the parties, are required to answer all questions on their own behalf.

8. The Hearing Panel will ask the Reporting Party questions first, then the Responding Party's Advisor may ask questions of the Reporting Party. The Hearing Panel will next question the Responding Party in the same manner allowing the Reporting Party's advisor to then ask questions of Responding Party. The Hearing Panel will next question each witness with an opportunity for Reporting Party's advisor and then Responding Party's advisor to question the witness. After questioning has been completed, additional follow-up questions of the parties and witnesses will only be permitted at the discretion of the Chair.

9. Parties are prohibited from questioning each other directly, and must do so through their Advisors, who will pose each question verbally to the Chair. Only relevant cross examination and other questions may be asked of a party or witness. The Chair will determine whether the question is relevant. If deemed relevant, the Chair will instruct the party or witness to answer; if deemed not relevant, the Chair will instruct the party or witness not to answer the question and provide an explanation for the decision. The Chair's decision on relevancy is final.

10. The purpose of allowing the parties, through their Advisors, to question the other party and witnesses is to permit the parties to probe the credibility, plausibility and reliability of statements asserted by the parties/witnesses, and to provide an opportunity to bring out additional facts and details about the alleged incident(s). Advisors must engage in questioning that is relevant, respectful, non-intimidating and non-abusive.

11. If either party or a witness fails to appear or stops participating before the conclusion of the hearing, the hearing will continue as scheduled, unless the Chair, in their sole discretion, determines the Hearing should be postponed for good cause.

12. The parties and their Advisors (and Support Person, if any) will return to their respective rooms after testifying before the Hearing Panel. Witnesses shall leave the premises or virtual space after testifying but remain available for re-call. If necessary, the Hearing Panel may recall the Reporting Party, Responding Party, or any witness for further questioning.

13. Upon completion of all testimony, each party, speaking on their own behalf, shall have five (5) minutes to provide a closing statement if they so choose. The Reporting Party will speak first followed by the Respondent. No reply will be permitted.

14. The Hearing Chair will adjourn the hearing.

## E. Evidence

1. Both inculpatory and exculpatory evidence is admissible during the hearing, if such evidence is relevant.

2. Evidence is relevant when a reasonable person would likely accept the information as having probative value about the underlying allegations.

3. Questions and evidence about the Reporting Party's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Reporting Party's prior sexual behavior are offered to prove that someone other than the Responding Party committed the conduct alleged by the Reporting Party, or if the questions and evidence concern specific incidents of the Reporting Party's prior sexual behavior with respect to the Responding Party and are offered to prove consent.

4. Questions and evidence about a party's prior sexual history with an individual other than a party to the proceedings are not relevant, except to: prove the source of injury; prove prior sexual misconduct; support a claim that a student has an ulterior motive; or impeach a party's credibility after that party has put his or her own prior sexual conduct at issue.

5. Hearing Officers must protect privileged information protected by state or federal law (e.g., FERPA, HIPPA, or Attorney-Client) unless the person holding the privilege waives the privilege.

6. The Hearing Panel may consider statements made by the parties and witnesses during the investigation, emails or text exchanges between the parties leading up to the alleged sexual harassment or OSM, and statements about the alleged sexual harassment or OSM if such evidence is relevant, regardless of whether the parties or witnesses submit to cross-examination at the live hearing. The Hearing Panel may also consider police reports, Sexual Assault Nurse Examiner documents, medical reports, and other documents if such evidence is relevant even if those documents contain statements of a party or witness who is not cross-examined at the live hearing. The Hearing Panel may not draw an inference about the decision regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer questions.

7. The Chair shall have the discretion whether to allow evidence to be presented at the hearing that was available during the investigatory process.

8. Should the parties or Hearing Panel wish to hear from a witness at the hearing who was not previously disclosed during the investigative process, the Chair may, in their sole discretion, temporarily adjourn the hearing and request that the Investigator interview the witness and provide the interview summary/transcript to the parties before reconvening the hearing, or continue the hearing and invite witnesses to appear and submit to questions from the Hearing Panel and the parties Advisor, if that testimony is relevant.

## F. Written Determination

1. Upon completion of the hearing, the Hearing Panel shall objectively evaluate and weigh the relevant evidence to determine the outcome based on a preponderance of the evidence and will issue a written determination that includes the finding and rationale. A majority vote is required for a finding on each allegation of Sexual Harassment or OSM.

2. Where credibility of the parties is an issue in determining preponderance of evidence, the rationale will include an explanation of how the Hearing Panel resolved questions of credibility.

3. If the Hearing Panel finds a Responding Party responsible for a violation of the Policy, prior to the issuance of the written determination, the Hearing Panel will share the finding with the appropriate office (Student Respondent – Office of Student Accountability & Restorative Practices; Faculty Respondent- Office of the Provost; or

Staff Respondent – Supervisor and Office of Human Resources) to determine the appropriate sanction to be included in the written determination.

4. The written determination must include:
a. The allegations of sexual harassment or OSM;
b. A description of the procedural steps taken from receipt of the Formal Complaint through determination (e.g., notification to parties, interviews with parties and witnesses, site visits, methods used to gather evidence, and hearing(s) held);
c. Findings of fact supporting the determination;
d. Conclusions regarding the application of the Policy to the facts;
e. A statement of, and rationale for, the result as to each allegation, including a determination of responsibility, any disciplinary sanction imposed by the appropriate authority on the Responding Party, and the remedies designed to restore or preserve equal access to the Reporting Party; and
f. The procedures and permissible grounds for appeal.

5. The Title IX Coordinator will distribute the Hearing Panel's written determination to the parties simultaneously no later than fifteen (15) business days after conclusion of the hearing, unless good cause exists for an extension of time. The University will provide written notice of any extension and the reasons justifying good cause for the extension to both parties.

6. An audio or audiovisual recording of the pre-hearing conference, if any, and the live hearing will be made available to the parties for inspection and review, upon request, within five (5) business days after the conclusion of the live hearing.

# XI. Sanctions and Remedies

## A. Sanctions

The University has discretion to tailor disciplinary sanctions to address specific situations and may use the disciplinary process as an educational tool rather than a punitive tool due to wide discretion to utilize informal resolution processes.

In determining the appropriate sanction(s), the University will examine a number of factors, including, but not limited to: 1) level of risk of harm to the community; 2) the nature and seriousness of the offense; 3) use of drugs or alcohol in the perpetration of the violation; 4) motivation underlying the Responding Party's behavior; and/or 5) the Responding Party's record of past misconduct, including prior violations of the same or similar type.

The range of possible disciplinary sanctions that the University may implement following any determination of responsibility for Student, Staff, and Faculty Responding Parties may be found in Section XI of the Policy.

## B. Remedial or Protective Interventions for Reporting Party

As appropriate, upon issuance of a written determination and, if applicable, issuance of sanctions, the Title IX Coordinator, in consultation with appropriate University departments, will identify reasonable short-term and/or long-term remedies to address the effects of the conduct on the Reporting Party, prevent its reoccurrence, restore the Reporting Party's safety and well-being, and address the effects of this conduct in the educational workplace.

# XII. Appeals

Both parties have the right to appeal a dismissal of a Formal Complaint or any allegation therein, and any finding or sanction imposed as set forth below. Such appeals are heard consistent with these Procedures.

## A. Grounds for Appeal

Either party may appeal the dismissal of a Formal Complaint or any allegations therein, and from a written determination regarding responsibility on the following grounds only:

1. A procedural error or irregularity that affected the outcome;
2. New evidence that was not reasonably available at the time the determination of responsibility or dismissal was made, that could affect the outcome of the matter; and/or
3. The Title IX Coordinator, Investigator(s), or Hearing Officer(s) had a conflict of interest or bias for or against Reporting Parties or Responding Parties generally or individual Reporting Party or Respondent that affected the outcome.

Either party may also appeal any sanction imposed in the written determination on the following grounds only: the severity or proportionality of the sanction.

Mere dissatisfaction with a dismissal, determination regarding responsibility, or sanction is not a valid basis for appeal.

## B. Appeal Timeline

A party must submit their own appeal in writing within five (5) business days of the date of the written determination is sent by the Title IX Coordinator. Failure of a party to submit their own appeal within the allotted time will render the written determination final and conclusive.

If an appeal is received by one party, the Title IX Coordinator will notify the other party in writing of the appeal submitted. The other party will be permitted to review the written appeal and any supporting documentation submitted by the other party, and will have an opportunity to submit a written response to the appeal within five (5) business days of the date the Title IX Coordinator sent the notification of an appeal. Any written response and supporting documentation to an appeal will be shared with the appealing party. No replies are permitted.

Upon receipt of a written response, or expiration of the time to provide a written response if no response is submitted, the Title IX Coordinator will appoint a trained Appellate Officer to decide the appeal. The Appellate Officer will not be the same person as the decision-makers that reached the determination being appealed, the Investigator(s), or the Title IX Coordinator.

The Title IX Coordinator will promptly provide written notice of the name of the Appellate Officer to both parties simultaneously. Within 24 hours of receipt of the notice, either party (not an Advisor or Support Person) may assert to the Title IX Coordinator, in writing, that the Appellate Officer has a conflict of interest or bias. The written objection must be filed with the Title IX Coordinator, who has the sole and final authority to determine whether good cause exists to replace the Appellate Officer. When the selection of the Appellate Officer is final, the Title IX Coordinator will provide the appeal and all related documents to the Appellate Officer. The Appellate Officer will review the appeal documents along with the relevant written and audio/audio visual record. The Appellate Officer will defer to the original finding

and sanction(s) of the Hearing Panel, remanding a matter on a specific issue(s), or modifying a finding or sanction(s) only when there is compelling justification to do so. An Appellate Officer may take one of the following actions on appeal:

1. Dismiss the appeal for failure to articulate a valid ground or grounds for appeal as set forth in Section XII.A., upholding the initial outcome and sanction(s), if any;
2. Deny the appeal and uphold the initial outcome and sanction(s) with a rationale supporting the denial of the appeal;
3. Where there is a procedural error or new evidence that could have affected the outcome, remand the matter to the hearing panel with specific instructions on the remanded issue(s); or
4. Modify the finding and/or sanction with a rationale supporting the modification.

Upon completion of their review, the Appellate Officer will issue a written decision and rationale for the result. The Title IX Coordinator will distribute the written decision to all parties simultaneously within ten (10) business days after the Appellate Officer's receipt of the appeal from the Title IX Coordinator, unless good cause exists for an extension of time. The University will provide written notice of any extension and the reasons justifying good cause for the extension to the parties.

## C. Appeal Format

All appeals and responses to appeals must be submitted by the party on their own behalf (appeals and responses signed by a party's Advisor or Support Person will not be accepted) in writing to OIIE via hard-copy or email to:

Office of Inclusion and Institutional Equity
8000 York Road, AD 214
Towson, MD 21252
titleix@towson.edu

The appeal must specifically state the basis for appeal and include relevant supporting documentation. The party appealing should address the central issue of the appeal directly, as irrelevant information will not be considered. Any response to the appeal should address the central issues of the other party's appeal. An appeal is not a review of the entire matter. It is an objective review of the written documentation related to the investigatory and hearing process, and record of the hearing along with appeal-related submissions as permissible herein. Accordingly, the Appellate Officer will not interview, question, or meet with witnesses, parties or a party's Advisor or Support Person.

# XIII. Final Outcome

After the appeal process has concluded (or when the time for an appeal has passed with no appeal submitted, whichever is later), the Title IX Coordinator will promptly notify the appropriate University officials as well as the Reporting and Responding Parties, in writing, of the final outcome of the Formal Complaint.

Effective

August 14, 2020

Amended: August 25, 2021

8000 York Road
Towson, MD 21252

📞 410-704-2000

Contact Us

Directions & Parking

Work at TU

Accessibility

Privacy

Clery Report

🔗 Sign up for text alerts

🅰 Translate

Copyright

© 2023

A University System of Maryland Member Institution