IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN DOE, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. ADC-23-3100 |
| | * | |
| THE BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF MARYLAND, et al., | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendants, The Board of Regents of the University System of Maryland, et al. ("Defendants") move this Court to dismiss Plaintiff John Doe's Complaint. ECF No. 21.[1] After considering Defendants' Motion and the responses thereto (ECF Nos. 21, 24, 29) the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). For the reasons stated herein, Defendants' Motion is DENIED.

### FACTUAL BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765-66 (4th Cir. 2022). At all times relevant to the Complaint, Plaintiff was a full-time undergraduate student at Towson University ("the University"). ECF No. 1 at ¶ 6. At the time of the alleged events, he was completing his sophomore year. *Id.* at ¶ 16. While attending his sophomore year, Plaintiff was accused of sexual misconduct, based upon allegations from a female student, identified herein as Ms. Roe.

---

[1] On December 4, 2023, this case was assigned to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 15. All parties voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 18.

Per the University Policy, Defendant Erica Arrington was assigned to investigate Ms. Roe's claims against Plaintiff. *Id.* at ¶ 85. Defendant Arrington's investigation included reading a written narrative provided by Ms. Roe and interviewing M.D., Ms. Roe's friend. *Id.* at ¶¶ 87, 89. Ms. Roe declined to be interviewed. *Id.* at ¶ 87. Plaintiff asserts that "[t]hroughout the investigation, Defendant Arrington made preconceived notions as to Plaintiff's responsibility, relied on archaic assumptions, willfully ignored relevant evidence, and failed to prove or investigate obvious inconsistencies or omissions of relevant information by Ms. Roe." *Id.* at ¶ 86. At the investigation's conclusion, Defendant Arrington sent Plaintiff and Ms. Roe an evidence packet for their review and response. *Id.* at ¶ 95. Plaintiff sent Defendant Arrington a twelve-page response, highlighting what he believed to be inconsistencies in Ms. Roe's story. *Id* at ¶ 95. Information in Plaintiff's response was partially included in the final investigative report. *Id.* Plaintiff received his copy of the final report on July 17, 2022. *Id.* at ¶ 96.

On July 18, 2022, Defendant Arrington sent Plaintiff and Ms. Roe an email containing the prospective panel members for Plaintiff's upcoming disciplinary hearing. *Id.* at ¶ 101. The email instructed Plaintiff and Ms. Roe to review the list and inform the University if either party had a "personal conflict with any named panel member." *Id.* Plaintiff does not assert that he challenged anyone on the list. *See id.* The hearing panel ultimately consisted of Allison Peer, Director of Student Conduct and Civility Education and panel chair; Danielle Woody, Associate Director of Student Conduct and Civility Education; Dario DiBattista, Director of the Military and Veterans Center; and Stephen Willems, Accessibility and Disability Services Specialist, as an alternate panel member. *Id.* at ¶ 103.

The hearing took place on August 11, 2022. *See* ECF No. 33. Plaintiff was accompanied by his mother and an attorney. *Id.* Ms. Roe did not attend. ECF No. 1 at ¶ 117. The panel heard

testimony from both M.D. and Plaintiff. *Id.* at ¶¶ 124–125. Following the hearing, the panel found that Plaintiff was not responsible for violations of sexual coercion, forcible sodomy, forcible rape, or forcible fondling. *Id.* at ¶ 155. However, the panel did find Plaintiff responsible for sexual assault. *Id.* In support of this finding, the panel stated, *inter alia*, that:

> Although Responding Party stated that he believes that Reporting Party saw him remove the condom before resuming penetration without one, he stated that he did not have a conversation with Reporting Party to obtain consent to have unprotected sex prior to re-engaging in sexual intercourse without a condom. Responding Party also admitted that after engaging in unprotected sex for about one minute, the Reporting Party specifically asked him to stop and put a condom on. This is further evidence Responding Party never obtained knowing, voluntary, and affirmative consent from Reporting Party to engage in sexual intercourse without a condom. Based on his own admissions during the hearing and his report of the events that occurred, the Hearing Panel finds by a preponderance of the evidence that Responding Party failed to obtain "knowing, voluntary, and affirmatively communicated willingness to mutually participate in a particular sexual activity or behavior" – unprotected sexual intercourse and the touching of Reporting Party's vagina with his penis without a condom – prior to engaging in unprotected sexual intercourse…for the purpose of his sexual gratification….[T]hereby the Hearing Panel finds Responding Party responsible for "sexual assault" as defined by Policy.

ECF No. 1 at ¶ 176.

Based on the panel's determination, Plaintiff was suspended from the University through the spring of 2024. *Id.* at ¶ 190.

## Procedural Background

Plaintiff filed an appeal, which was denied on October 22, 2022. *Id.* at ¶ 198. On November 14, 2023, Plaintiff filed suit in this Court, alleging discrimination in violation of Title IX of the Education Amendments of 1971 (Count I); violation of Fourteenth Amendment due process rights (Counts II–III); violation of the due process clauses of the Maryland Declaration of Rights (Count IV); violation of the equal protection clause of the Maryland Declaration of Rights (Count V); violation of the equal rights amendment of the Maryland Declaration of Rights (Count VI); breach

of contract (Count VII); and negligence (Count VIII). ECF No. 1. Plaintiff additionally entitled Count IX as "injunctive relief," and Counts X and XI as "declaratory judgment." *Id.*

On January 22, 2024, Defendants filed a Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction. ECF No. 21. On February 12, 2024, after having been granted a time extension, Plaintiff filed a Response in Opposition to the Motion. ECF No. 24. That same day, Plaintiff also filed a Motion for Voluntary Dismissal of Counts IV–VIII of the Complaint, which the Court granted. Defendants' reply was filed March 4, 2024, along with an Interim Motion to Seal Exhibits, which the Court granted. ECF Nos. 29, 30, 31. On March 7, 2024, the Court granted Plaintiff's Motion to Proceed under a Pseudonym. ECF No. 34.

## DISCUSSION

**Standard of Review**

A Rule 12(b)(6) motion "tests the sufficiency of the claims pled in a complaint." *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). Its purpose is not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rather, "[a] Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *Gaines v. Baltimore Police Dep't*, No. ELH-21-1211, 2023 WL 2185779, at *7 (D.Md. 2023) (quoting Fed. R. Civ. P. 12(b)(6)).

Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept

4

as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that [Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As for Title VII claims at the motion to dismiss stage, "the question is whether the plaintiff alleges facts that plausibly state a violation of Title VII above a speculative level." *Gaines*, 2023 WL 2185779, at *8 (cleaned up and internal quotations removed) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020). A plaintiff must state a plausible claim for relief, but "need not establish a prima facie case of discrimination." *Gaines*, 2023 WL 2185779, at *8 (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 122 (2002)).

**Discrimination in Violation of Title IX of the Education Amendments of 1971 (Count I)**

Defendants argue that Plaintiff fails to state a claim under either the "erroneous outcome" or "selective enforcement" theory of Title IX sex discrimination and that Plaintiff is unable to plausibly allege that sex discrimination was the "but-for" cause of the University's decision to suspend Plaintiff. ECF No. 21 at 11–15. Plaintiff responds that he need not plead either theory in order to survive a motion to dismiss, but that regardless, he has stated a claim under both theories. ECF No. 24 at 8. I agree with Plaintiff but for clarity, discuss these theories in light of the facts.

Title IX provides that "[n]o person...shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance." *Feminist Majority Foundation v. Hurley*, 911 F.3d 674, 685–86 (4th Cir. 2018) (internal quotations omitted) (citing 20 U.S.C. § 1681(a)). Thus, "a victim of sex discrimination is entitled to pursue a private cause of action against a federally-funded educational institution for a violation of Title IX." *Id.*; *see Cannon v. Univ. of Chi.*, 441 U.S. 677, 709 (1979). Title IX's protections also extend to sex-motivated discrimination in university disciplinary proceedings. *Pappas v. James Madison University*, No. 5:22-cv-00028, 2023 WL 2768425, at *10 (Mar. 31, 2023) (citing *Sheppard v. Visitors of Virginia State University*, 993 F.3d 230, 235–37 (4th Cir. 2021)).

In a matter of first impression, the Fourth Circuit held in *Sheppard* that for a plaintiff to state a plausible claim for relief under Title IX in the context of university disciplinary proceedings, he must allege facts that, if true, would "'raise a plausible inference that the university discriminated against [him] on the basis of sex.'" *Id.* In so holding, the Court endorsed the Seventh Circuit's approach to the issue, rather than the Second Circuit's erroneous outcome and selective enforcement theories of liability.[2] *Sheppard*, 993 F.3d at 236; *see Pappas*, 2023 WL 2768425, at *10. The Court also clarified that its approach included the "requirement that a Title IX plaintiff adequately plead causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding." *Id.* "Not just any causal link will suffice…Title IX prohibits discrimination by federally-supported education institutions 'on the basis of sex.'" *Id.*

Therefore, a "plaintiff must show that sex was the 'but-for' cause of the university's challenged disciplinary proceeding." *Pappas*, 2023 WL 2768425, at *11. To meet that standard, a

---

[2] However, the Court noted that "[i]n adopting this approach…we find no inherent problems with the erroneous outcome and selective enforcement theories identified in *Yusuf*." *Id.*; *see Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Indeed, "either theory, with sufficient facts, may suffice to state a plausible claim. We merely emphasize that the text of Title IX prohibits all discrimination on the basis of sex." *Id.* (citing 20 U.S.C. § 1681(a)).

plaintiff must point to "sufficiently particularized allegations of gender discrimination such as statements or patterns of decision-making that also tend to show the influence of gender." *Ortegel v. Virginia Polytech Institute & State University*, No. 7:22-cv-00510, 2023 WL 8014237, at *10 (W.D.Va. Nov. 20, 2023) (quoting *Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 503 (W.D. Va. 2019) (internal quotations omitted). This Court will adhere to the Fourth Circuit's clear directives on the matter and analyze whether Plaintiff's Complaint has alleged facts that, if true, raise a plausible inference that the University discriminated against him on the basis of sex.

The Complaint contains both general allegations regarding the climate surrounding alleged sexual misconduct at the University and specific allegations regarding the University's investigation and adjudication of Ms. Roe's complaint against Plaintiff.

*External pressure on the University*

Some courts have found that external pressure on colleges and universities, including pressure imposed by the federal government, to tackle sexual misconduct can 'provide[ ] a backdrop that, when combined with other circumstantial evidence of bias in [a plaintiff's] specific proceeding, gives rise to a plausible claim'" of sex discrimination. *Pappas*, 2023 WL 2768425, at *11 (citing *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018)). However, "courts 'uniformly hold' that external pressure…'alone is not enough to state a claim that the university acted with bias in a particular case.'" *Id.* (quoting *Doe v. Coastal Carolina Univ.*, 522 F. Supp. 3d 173, 179 (D.S.C. 2021).

In the Complaint, Plaintiff devotes significant time generally describing the federal government's past attempts to strengthen protections for student victims of sexual misconduct. *See* ECF No. 1 at ¶¶ 221–272. Plaintiff particularly highlights the U.S. Department of Education's

April 2011 "Dear Colleague Letter" to colleges and universities, contending that, through the letter, the federal government began a campaign of pressuring educational institutions to provide more protections to students alleging sexual assault. *See id.* at 55. Plaintiff argues that, in response to the Dear Colleague Letter, schools began "adopting procedures favoring alleged victims (the great majority of whom are female) and essentially eliminating fair process protections for respondents (the great majority of whom are male). *Id.* at ¶ 252.

*Bias of non-University defendants*

Plaintiff additionally alleges that two of the hearing panel members, Defendants Peer and DiBattista, were biased against him because of his sex. Plaintiff's allegations about Defendant Peer are wholly concerned with a single Youtube video, produced by the University, in which she appeared. ECF No. 1 at ¶ 111. In the video, Defendant Peer states that the University aims "to help students learn the value in accepting accountability when they have caused harm to themselves or others." *Id.* She further states that "[f]amilies can support their students by reminding them that their choices and behaviors can have an impact on others as well as themselves." *Id.* at ¶ 111. Plaintiff argues that Defendant Peer's comments "suggest that [the University's] student disciplinary processes and overall campus culture is centered around believing allegations and holding students accountable for mere allegations [of sexual misconduct]." *Id.* at ¶ 112. Further, "[t]his belief rendered her unfit to serve as a panel member, as she was incapable of being fair and impartial." *Id.* at ¶ 113. Plaintiff alleges facts that at this stage of the litigation could show a bias against male students.

As for Defendant DiBattista, Plaintiff alleges that he "was unfit to serve as an impartial panel member, as he had a proclivity of being bias[ed] against males, per his own social media accounts." *Id.* at ¶ 114. According to Plaintiff, Defendant DiBattista was "predisposed to believe

Ms. Roe based solely on her gender, in violation of Title IX." *Id.* at ¶ 114. In support, Plaintiff cites numerous social media posts that Defendant DiBattista made in the years before the hearing, including:

> "A woman, it seems, may have lied [about] rape but that's no reason to not support anyone else who has their own claims." (December 12, 2014)
>
> "The friend zone's a bad place, right? Sike. Friendship is awesome! Women aren't sex machines you put nice coins in until they sleep with you." (July 29, 2017)
>
> "In MY nation, this man gets castrated and his life-time probation officer forces him to eat gobs of saltpeter for every mean [sic] for the rest of his life." (December 3, 2017, regarding the high-profile appeal of Brock Turner's rape conviction)
>
> "What world is it that one woman falsely accusing rape equals the vast majority of woman who are sexually assaulted and speak out about it are liars? Confirmation bias is strong, ya'll. #IBelieveYou" (September 26, 2018)
>
> "I'm seeing glowing tributes today about a dead man whom, I know for a fact, violently raped one of my friends. I'm adding this to the list of reasons women don't report sex crimes. When this dude dies I ordered prime rib at the restaurant he worked at. It was so good." (October 19, 2018)

ECF No. 1 at ¶ 105.

Plaintiff argued that these social media posts gave rise to a plausible inference of bias in his disciplinary proceeding. *See Doe v. Regents of University of California*, 23 F.4th 930, 938 (9th Cir. 2022). Plaintiff particularly highlights the October 19, 2018 tweet, where Defendant DiBattista stated that he had eaten a "good" steak when he learned that his friend's attacker had died, as evidence of Defendant DiBattista's bias in favor of women. *See id.* at ¶¶ 105, 108–109. Claims that particular adjudicators or investigators have participated in activities whose goal is to assist sexual-assault victims are generally insufficient to state a claim of bias. *Pappas*, 2023 WL 2768425, at *11; *see Doe v. Loe*, No. PX-16-3314, 2018 WL 1535495, at *10 n.8 (D.Md. Mar. 29, 2018), *aff'd*, 767 F. App'x 489, 491 (4th Cir. 2019) (finding assertions that the Title IX Director advocated for sexual-assault victims did not support a plausible inference of bias).

9

In this case Defendant DiBattista's posts go much further than simply advocating for female victims. Posting that DiBattista enjoyed a good steak dinner when his friend's attacker died, sufficiently raises the issue from advocation to potential bias.

Plaintiff directs the Court's attention to *Ortegel v. Virginia Polytech Institute & State University*, No. 7:22-cv-00510, 2023 WL 8014237, at *10 (W.D.Va. Nov. 20, 2023), in which the court found that the actions of a university Title IX disciplinary hearing panel chair, including his social media postings, could support a plausible inference of gender bias. Though not binding on this Court, *Ortegel* is nevertheless informative. *See id.* In *Ortegel*, the hearing panel chair tweeted that he was "doing [his] part to hold men other men [sic] accountable," and had reposted a message reading: "quite interesting how many college aged boys and men seem to understand consent when it comes to drinking their chocolate milk, but not when it comes to someone else's body and space." *Id.*

Construing Plaintiff's Complaint as true and looking at the totality of the Board's actions, at this stage of the litigation, Plaintiff "has pleaded facts sufficient to give rise to a plausible inference of discrimination that was caused by his sex." *Sheppard*, 993 F.3d at 238. Defendants' Motion to Dismiss the Complaint is DENIED as to Count I.

**Violation of the Due Process Clause of the 14th Amendment (Counts II and III)**

In Counts II and III of the Complaint, Plaintiff asserts claims against the Individual Defendants for violation of his rights under the Due Process Clause of the Fourteenth Amendment.[3] Defendants argue that the Court should dismiss these claims because Plaintiff cannot

---

[3] In Count II, Plaintiff has sued the Individual Defendants in their official capacities for injunctive relief. In Count III, Plaintiff has sued the Individual Defendants in their individual capacities for damages.

show that he had a liberty or property interest in his reputation or continued enrollment at the University. ECF No. 21-1 at 15.

The Fourteenth Amendment provides that "no state shall make or enforce any law which shall...deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, a plaintiff must allege (1) that he possessed a protected liberty or property interest, (2) that the state or its agents deprived him of this interest, and (3) that this deprivation was effectuated without constitutionally sufficient process." *See Kendall v. Balcerak*, 650 F.3d 515, 528 (4th Cir. 2011); *see also Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp 3d 712, 719 (E.D. Va. 2015).

*Plaintiff has alleged a constitutionally protected liberty interest in his reputation and continued enrollment at the University*

After reviewing the complaint in the light most favorable to Plaintiff, I find that plaintiff has met his burden in pleading a protected liberty interest as well as a constitutionally protected interest in his enrollment at Towson State University. Plaintiff alleges that the University deprived him of "his right to a fair and impartial adjudication, his right to a meaningful opportunity to be heard by those making the decision on credibility and ultimately responsibility, and his right to confront his accuser by way of cross-examination." ECF No. 1 at ¶ 316. He further alleges that "Defendants conducted a result driven process aimed at finding men responsible [for] sexual misconduct," (*Id.* at ¶ 316) and that the University and the hearing panel expressed "general bias." *Id.* at ¶ 317.

In the context of Title IX disciplinary hearings, a public university "must provide the accused notice of the violation and an opportunity to be heard." *Doe v. Loh*, No. PX-16-3314, 2018 WL 1535495, at *4 (D.Md. Mar. 29, 2018) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975). "Where a student faces possible expulsion or suspension, that student must receive, at a minimum,

'advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker.'" *Id.* (quoting *Henson v. Honor Comm. Of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983)). While disciplinary-based expulsions require more stringent procedural safeguards than academic dismissals, the accused is not entitled to "trial-like" procedures. *Id.* (citing *Butler v. Rector & Bd. of Visitors of Coll. Of William & Mary*, 121 Fed.Appx 515, 519–20 (4th Cir. 2005).

Here, Plaintiff does not dispute that he received advance notice, but alleges several other procedural "due process" violations in connection with his suspension. *See* ECF No. 24 at 23. Chief among Plaintiff's complaints are that Ms. Roe did not participate in the hearing and that she declined to be interviewed by the investigator. ECF No. 24 at 25. Ms. Roe instead submitted a written account of what transpired on the night in question. Plaintiff argues that both being unable to cross-examine Ms. Roe, and the hearing panel's inability to properly assess her credibility, resulted in an unfair and biased hearing. *Id.* at 23–24. None of the panel members even saw Ms. Roe, much less interviewed her.

As for the hearing panel's inability to properly assess Ms. Roe's credibility, the hearing panel took Ms. Roe's absence into account in ultimately finding that Plaintiff was not responsible for violations of sexual coercion, forcible sodomy, forcible rape, or forcible fondling. For example, in its outcome letter, the Panel concluded that they were

> unable to substantiate the allegation of "Forcible Sodomy." While Reporting Party alleged that Responding Party forced her to perform oral sex without her consent, Responding Party denied these claims and indicated that he verbally gained affirmatively communicated willingness to participate throughout both touching and oral sex. *Without the presence of the Reporting Party to fully assess her credibility or gain more details about her allegation*, the Hearing Panel concludes that the facts presented do not support a preponderance of the evidence regarding the allegation of "Forcible Sodomy."

ECF No. 1 at ¶ 174 (emphasis added), *See also,* ¶¶ 171- 175.

The Fourth Circuit has consistently held that, in a school disciplinary hearing, "a full-dress judicial hearing, with the right to cross-examine witnesses," is not required. *Virginia Polytechnic Institute and State University*, 400 F.Supp.3d 479, 501 (citing *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158–59 (5th Cir. 1961)). While a trial in the classic sense is not required in a school disciplinary hearing for sexual misconduct, there has to be some modicum of fairness. It is clear to the Court that the Hearing Panel's decision was inconsistent in that they found a lack of evidence to support the credibility of the Reporting Party on all charges other than the sexual assault. In sustaining the sexual assault charge, the Defendants argue they used the Responding party's own words and therefore there was no need for the credibility finding of the Reporting Party.

The Responding party stated they were having consensual sex when he stopped and removed a condom. He stated the Reporting Party watched him remove the condom, then they continued vaginal intercourse. She then asked him to put on another condom, which he did. From these facts, Plaintiff argues the Hearing Panel made an illogical leap, substituting their own facts that the Reporting Party did not consent to the unprotected sex. The Panel clearly stated they could not make findings as to the credibility of the Reporting Party without her presence so instead, they inserted their own facts – she did not consent, sufficiently raising the issue of failed due process. Plaintiff could not cross-examine the Hearing Panel.

It is also important here to look at the administrative process in its totality. Plaintiff's complaint that the social postings of the Hearing Panel set the stage for a biased result is sufficiently supported in the Complaint. The facts Plaintiff alleged, that the Panel dismissed all the allegations except one where the Panel substituted certain facts and assumptions that did not exist denying him due process, is sufficient to withstand a motion to dismiss.

In denying this Motion at this stage of the litigation, the Court fully recognizes the difficulties victims of sexual assault face in bringing charges either in the administrative process or criminal proceedings. Nothing in this Opinion is meant to diminish the emotional or physical hurdles that victims must overcome going forward in life. This Opinion is limited to the issues presented and addresses the requirements of Title IX and due process of law.

As Plaintiff has sufficiently alleged that Defendants deprived him of his right to due process under the Fourteenth Amendment, Defendants' Motion to Dismiss the Complaint is DENIED as to Counts II and III.

**Claims for Injunctive Relief and Declaratory Judgments (Counts IX, X, & XI)**

Under what Plaintiff labels "Count IX," Plaintiff seeks a permanent injunction enjoining the University "from instituting, proceeding with or maintaining the instant sexual misconduct adjudication and/or sanction against Plaintiff." ECF No. 1 at ¶ 376. "Count X" seeks a declarative judgment requiring the Defendants to (1) reverse the hearing's outcome and findings; (2) restore Plaintiff's reputation; (3) expunge and seal his disciplinary record; and (4) remove any record of his dismissal from the University; (5) destroy any record of Ms. Roe's complaint; and (6) reinstate Plaintiff to good standing. *Id.* at ¶ 381. Further, Plaintiff seeks a declaration that the University's rules regarding the adjudication of sexual misconduct allegations are unconstitutional. "Count XI," Plaintiff seeks a declaration that Defendants breached a contract with Plaintiff. *Id.* at ¶ 386. In his Response in Opposition to the Motion to Dismiss, Plaintiff asks the Court to reconstrue Counts IX, X, and XI as prayers for relief and the Court will construe them as prayers for relief, so there is no need to rule on them in this Motion.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 21)

is DENIED. A separate Order will follow.

Date: 17 April 2024

A. David Copperthite
United States Magistrate Judge